### DELOGNY ET ALS. *vs.* SMITH ET ALS.

APPEAL FROM THE COURT OF THE FIRST DISTRICT.

A private act acquires no authenticity from the fact of its being acknowledged *before* and recorded *by* the parish judge.

Under a special allegation of one kind of title, another cannot be proved.

Under a forced alienation of property, the purchaser will acquire no title unless the formalities of the law be strictly complied with.

The return of the officer, that the property was sold after legal advertisements, is not conclusive.

The person whose property is sold under an execution, cannot be considered as a party to the act of sale.

The act of the legislature, which requires that property seized for taxes, be sold after three months advertisement, means the three months immediately preceding the sale.

The facts of this case are fully stated in the opinion of the court, delivered by *Porter J.*

The plaintiffs state, that they are the owners of two lots, in the Fauxbourg La Course, viz : nos. six and seven, in square seventy-four, having acquired the same, by donation from their father, and by inheritance from their mother. That the defendant, Smith, has taken possession of them, and refuses to give it up.

Smith pleaded the general denial, and averred, that he was the true and lawful proprietor of the lots in question, having

purchased them from one Thomas Fitzwilliams. The answer concludes with a prayer, that Fitzwilliams, may be cited in warranty.

He was cited, and appeared, and answered. He pleaded also, the general issue, and further averred, that after due and legal proceedings before Gallién Preval, an associate judge of the City Court of New-Orleans, wherein the mayor, aldermen and inhabitants of the city were plaintiffs, and the vacant lots of ground, Nos. six and seven, in square No. seventy-four, and their owners were defendants, the said lots, were on the seventh day of April, 1829, sold by the marshal of the city of New-Orleans, and adjudicated to the respondent, whereby, he acquired a good title to them.

But if he did not, he prayed that the mayor, aldermen and inhabitants of New-Orleans, might be cited, and condemned to pay him all damages he should sustain by the eviction.

The corporation of the city, pursuant to this prayer, were made parties, and they pleaded in substance, that the plaintiffs had been legally divested of their property, by the proceedings before the associate city judge.

The judge below, gave judgment for the petitioners. The defendant, Smith, and Fitzwilliams, who was cited in warranty, appealed.

On the trial, the plaintiffs offered in evidence, an act *sous seing privé*, which had been enregistered in the office of the parish judge, of the parish of St. James. No proof was given of its execution, and its admissibility was objected to. The court overruled the objection, and erred in doing so. The parish judge in his certificate states, that the donor had acknowledged the instrument before him, and requested it to be placed on record. This will authorise the judge to enregister the instrument, but the signatures of the parties, and that of two witnesses, were necessary to make it a public act, of which a copy under the notarial seal of office would be legal evidence. This point has been frequently decided, and more particularly in the cases of *Marie Louise* vs. *Cauchoix*, and *Seymour* vs. *Cooley.* 11 *Martin*, 243. 3 *ibid.*, *N. S.* 396.

A private act requires no authenticity from the fact of its being acknowledge *before* and recorded *by* the parish judge.

EASTERN DIST.
February, 1832.
─────────────
DELOGNY ET ALS.
vs.
SMITH ET ALS.
The plaintiffs next offered an act, purporting to be a *transaction*, between the same parties, who executed the instrument under *sous seing privé*, by which among other things, they ratify and confirm the dispositions of that act, except so much of it as is modified or altered by the agreement then and there made between them. This evidence was objected to on the ground, that there was no allegation in the petition of such a title. The court admitted it, and the defendants excepted.

We think, the court erred in admitting this instrument. The petition states, that the plaintiffs own the premises, by inheritance from their mother, and by donation from their father. Under a special allegation of one kind of title, another cannot be proved. In the case of *Ory* vs. *Winter*, relied on by the appellees, the evidence did not contradict any of the averments, in the answer; but supported the general allegation, that only such a sum was due the petitioners. The party too, in that instance, was apprised long before the trial, that the proof would be produced, and was consequently deprived of all objection, on the ground of surprise. 4 *Martin.*

*Under a special allegation of one kind of title another cannot be proved.*

But the plaintiffs show a good title to one-half of the premises, by descent from their mother; and we are under the necessity of examining the strength of that which the defendants oppose to it.

It is derived from a purchase made at a sale by the marshal of the City Court, under a judgment rendered by one of the associate judges in that court, in a suit where the mayor, aldermen and inhabitants of New-Orleans were plaintiffs, and two lots of ground, numbers 6 and 7, whose owner was unknown, were defendants. An attorney was appointed to defend the unknown owner, as he is styled in the record of the suit, and judgment was rendered in favor of the corporation for the sum of four dollars and twenty-five cents against this owner.

The proceedings just noticed, took place under an act of the legislature, passed the eighteenth of March, 1828, by the first section of which it is enacted, "That whenever any sum of money shall be due to the corporation of the city of New-Orleans by non-resident persons, who have no agent in this

city, for city taxes and other expenses to which the said owners are subject, for the repairs of their levees, roads, bridges, enclosures, banquettes, paving and other of the same nature, it shall be lawful for the city treasurer, after having made the proof of .the said debt before any competent tribunal, contradictorily with a person appointed by the said court to defend the said owner, to cause the city lots or other lands subject to the said taxes and other expenses, to be seized and sold in the manner hereafter prescribed, without being bound to discuss the other property which the said owner may have in the parish of New-Orleans, or elsewhere."

The second section of the article requires "the sale of the town lots, and other lands thus seized, shall not be made until the said sale shall have been advertised during three months in two of the newspapers printed in New-Orleans, both in the English and French languages, and also on complying with the other formalities prescribed by law for the sale of real property seized. See *acts of* 1828, *page* 102.

So far back as the year 1815, it was decided by this tribunal, in the case of *Reeves* vs. *Kershaw*, that a sale by an officer under an execution, wherein the property had not been duly advertised according to law, did not transfer the right and title in the thing sold to the purchaser. Ever since that period such has been the uniform jurisprudence of this state, and the doctrine was again fully examined in the case of *Dufour* vs. *Camfranc*. We deem it unnecessary to repeat here, the reasoning and authorities on which that conclusion was obtained. It rests on principles which appear to us incontrovertible. The citizen can only be deprived of his property in two ways—by his own consent, or by a forced alienation under the authority of law. The latter mode of transferring property, derives all its efficacy from a strict pursuance of the formalities which that law prescribes. Where then these are wanting, there is not the alienation by law, which can alone supply the want of consent by the owner. See 4 *Martin*, 513. 11 *ibid*, 609, 711.

Under a forced alienation of property, the purchaser will acquire no little unless the formalities of the law be strickly complied with.

If, therefore, in the instance before us there be found an irregularity in advertising the property, we shall be of opinion

the purchaser did not acquire a title by the adjudication made to him.

DELOGNY ET ALS.
*vs.*
SMITH ET ALS.

The return of the officer that the property was sold after legal advertisements, is not conclusive.

Before, however, examining the evidence on this head, it is proper to notice and dispose of an objection taken on the part of the appellants. They rely on the return of the marshal, and contend that as in it, this officer states, the property was sold *after legal advertisements,* no proof should be received in contradiction to it. The remedy of the plaintiffs is an action against him for damages.

This, if true, would be very unsafe doctrine ; but in our judgment it is not true. The positive provisions of our law relied on for its support, do not sustain it. The act of 1828, gives it is true to the sheriff's deed the same force and effect, as an authentic act ; and the 2233d article of the Louisiana Code, declares the authentic act to be full proof of the agreement contained in it against the contracting parties, their heirs or assigns. To what extent this provision may operate on the plaintiff's in a suit, (who through the intervention of a public officer, cause property to be sold,) and the purchaser at the sale so procured by them, this case by no means requires us to say.

The person whose property is sold under an execution cannot be considered as a party to the act of sale.

But we see no ground whatever, for considering the person whose property is sold, as a party to that act. So far from his assent being given, in almost ninety-nine cases out of one hundred, the property is sold without it. No doubt the sale binds him, though his consent be not given ; but this is not because he is a party to the act, either by himself or through his agents, but because the law has said that a forced alienation stands in place of his consent, if made with the required formalities. This condition, however, would cease to be one if the parties who violated the law, or neglected its provisions, were to be considered as agents of the defendant in execution, and he were bound by their assertions or admissions.

Equally do we consider the Code of Practice as failing to sustain the appellants in the ground assumed by them. The articles cited, were from 691 to 699. We understand them as making provision for the forms in which the act of sale is to be clothed, and its effect between the parties to it, viz. between the plaintiff on the one hand, who sells under the

authority of law through the agency of the sheriff, and the purchaser on the other. Indeed the 695th article expressly declares that the act of sale "adds nothing to the force and effect of the adjudication it is only intended to afford the proof of it." There is nothing, so far as we can discover, in our late codes, which changes the ancient rule on this subject, or which gives effect to an adjudication, that is not made after the usual delays, preceded by the regular advertisements.

The second section of the act already cited, requires the property which may be seized for taxes, to be sold after three months advertisement in two of the newspapers in this city, both in the French and English languages. The sale took place on the seventh of April, and in one of the news-papers the advertisement in French was inserted three times in December, three times in February, and four times in March, omitting altogether the month of January. The law does not say whether the three months in which the sale should be advertised, are the three months immediately pre-ceding the sale. But we think that such is the sound con-struction. Otherwise the corporation might give the notice at any time they pleased, and at so great an interval of time as to render nugatory nearly all the objects to be attained by advertising. Neither does the law say, whether the months are calendar months, or whether the advertisements must be inserted in the newspapers for a space of time equal to three months from the first notice to the day of sale, or three of the months designated in our calendar. Taking either as the true construction, the law was not complied with. The advertisements made in December cannot, in our judgment, aid the proceedings. There must be the regular notification in two of the newspapers of the city, both in the French and English languages, for three months previous to the sale. The same number of advertisements, or more, in other months, will not satisfy the law.

This opinion renders it unnecessary to examine whether the statute authorises any such proceeding as was resorted to in this instance, against property, where the owners of it were *unknown*. It also dispenses with an inquiry into the

correctness of the opinion of the court below rejecting evidence by which the defendants offered to prove, that they had an agent in town; that they had paid the very taxes for the non-payment of which their property was sold; and finally, that these facts were known to the syndic who reported the owners as unknown. Whether all this be true or not, we cannot say; but the facility with which such abuses might be practised, is a sufficient reason to hold all proceedings of this and a similar kind, to a strict account.

On the evidence before us, the plaintiffs are entitled to an undivided half of the premises; but we think the judgment should be so modified, as to enable them to prosecute any right they may have to the other portion of the lots.

The rights of the warrantors were not acted on in the court below, and we cannot pass on them here.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed: And it is further ordered, adjudged and decreed, that the plaintiffs do recover of the defendant in possession, an undivided half of the lots sued for, with costs in the court of the first instance, those of appeal to be paid by the appellees, reserving, however, to the appellees the right to enforce their claim to the other half of the lots in another suit: And it is further ordered, that this cause so far as it respects the rights of the parties cited in warranty, be remanded to the District Court, there to be proceeded in according to law.

On a re-hearing, *Porter, J.* delivered the opinion of the court.

In this case an application has been made for a re-hearing by the defendant. And he has drawn our attention to another part of the record, in which we find that a separate judgment was given against the vendor cited in warranty. This party has consented the judgment should be amended; and it is therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed: And it is further ordered, adjudged and decreed, that the plaintiff

do recover of the defendant in possession, an undivided half
of the lots sued for with costs in the court of the first instance;
those of appeal to be paid by the appellees, reserving, how-
ever, to the appellees the right to enforce their claim to the
other half of the lots in another suit: And it is further
ordered, that the defendant do recover against Thomas Fitz-
williams, his vendor called in warranty, the sum of one
thousand dollars, with legal interest from the date hereof, until
paid, together with costs.-