BERMUDEZ
v.
UNION BANK.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## GREENWOOD LEFLORE v. JAMES G. CARSON.

The vendor has no privilege, unless his act of sale be recorded in the office for recording mortgages.

A sale cannot be annulled for the non-payment of a portion of the price, where the parties, from their transactions, have rendered it impossible to place each other in the same situation they were in before the sale was made.

| 7 | 65 |
| 46 | 489 |
| 7 | 65 |
| 48 | 815 |
| 7 | 65 |
| 105 | 408 |
| 7 | 65 |
| 125 | 191 |

APPEAL from the District Court of Carroll, *J. N. T. Richardson*, *F. Stacey* and *Sparrow*, for plaintiff. *A. B. Caldwell*, for defendant. The judgment of the court was prouounced by

SLIDELL, J. The plaintiff sues as endorser of a note, given by the defendant to *Halsey*, the payee, for part of the price of a plantation, bought by the defendant from *Halsey*. The note, on its face, states its consideration, and that its payment is subject to the conditions contained in the act of sale.

The defendant excepted that the suit was premature. He also excepted, that if it was not premature, all further proceedings should be suspended, until the plaintiff, or *Halsey*, should give him security to protect him from disturbance, with which he alleged he was threatened by *J. F. Butler*, the transferree of a claim formerly held by *A. P. Merrill*. These exceptions he founds upon a stipulation contained in the act of sale for the suspension of the payment of this and other notes, upon certain contingencies. The stipulation, which is prolix, need not be set out at length. It is sufficient to quote the averment in the defendant's plea, which is in these words: "The true meaning of the above stipulation is, that said *Carson* was thereby to be protected from all danger of having to pay the note sued on in said suit, number 537, in order to preserve his title to the land conveyed to him by said act of sale."

For the proper consideration of the defence, it is necessary to state the material facts, which are complicated.

In May, 1837, *McDonald* mortgaged to the the Union Bank, a plantation and slaves, in the parish of Carroll, to secure a loan of $50,000. In June, 1837, he executed another mortgage on other slaves in the same parish, as security for the same debt. Both mortgages were, in June, 1847, inscribed in the mortgage book, kept in the office of the parish judge of that parish. At the time of executing these mortgages, all the property was unincumbered, and *McDonald* appeared on the public records as its sole owner. In 1836, *McDonald* had given a bond *sous seing privé*, to *J. M.* and *B. H. Payne*, to make them title to half of the plantation and slaves; and a few days afterwards, the *Paynes* and *McDonald* formed a partnership as cotton planters, which lasted until 1841. On the 21st June, 1837, immediately after *McDonald* had completed his loan from the Union Bank, he, in compliance with his bond, executed before a notary public, a deed of sale to the *Paynes*, of an undivided half of the plantation and slaves, for the price of $60,000, namely, $10,000 cash, and the balance in six notes. One of these notes was transferred to *Merrill* in 1838, or subsequently.

The deed declared that *McDonald* was to pay one-half of the loan of $50,000 obtained of the Union Bank, and the *Paynes* the other half, no mortgage for the price was stipulated in the deed, as is usually done. This conveyance was recorded in the record book of alienations, in the proper office of Carroll parish, but was not inscribed in the record book of mortgages. It is proved, that a separate book for recording mortgages had been kept in the office of the parish judge since 1833. In 1841, soon after the dissolution of the partnership between the *Paynes* and *McDonald*, the former executed to the Union Bank a mortgage for $31,656 45, upon the portion of the property which fell to them in the partition of the property made with *McDonald*. This mortgage was given in pursuance of the stipulations of the act of partition, and of the undertaking in the deed of purchase in 1837, by which they promised to pay one-half the Union Bank debt. It was accepted by the Union Bank, upon the certificate of the recorder of mortgages of the parish of Carroll, that there was no mortgage

upon the property in the name of the *Paynes*, and none in any other person's name, except that of *McDonald* to the Union Bank for $50,000 above mentioned. It was duly inscribed in the book of mortgages in Carroll parish, in August, 1841. Under this mortgage, the property was seized and sold to *White* in 1845. *White* sold the land to *Halsey*, and in 1846, *Halsey* sold to the defendant, as above stated. *Merrill*, as the holder of one of the *Payne* notes, claimed the vendor's privilege on the land; other persons also had claims. *White* bought at the sheriff's sale, made under the Union Bank mortgages, for the sum of $41,750 cash, and brought suit against the Union Bank and the other creditors, who claimed privileges and mortgages, in order to settle the question of priority among them, and determine to whom the purchase money belonged. *Merrill*, thus made defendant, asserted that, as holder of the note of *J. M.* and *B. H. Payne*, he had the privilege of vendor upon the property thus sold and its proceeds; he denied the existence of any mortgage rights in favor of the Union Bank, and prayed that he might have judgment for so much of the proceeds of the plantation as would satisfy his claim. There was judgment classing the creditors as follows: 1st, The Union Bank; 2d, *Halsey*; 3d, *January* : thus giving them all precedence over *Merrill*, whose claim of the vendor's privilege was rejected upon the ground of non-registry. See the case of *Maunsel White* v. *The Union Bank*, 6th Ann. 162.

The correctness of the decision in the case just mentioned, is not now questioned. Indeed, the matter is *res judicata* between *Merrill* and *White*, under whom the present parties hold. There is, therefore, no possibility of disturbance by reason of an outstanding vendor's privilege in favor of *Butler*, *Merrill's* transferree.

But, it is said, that there is still danger of disturbance, because the decision in that case turned only upon the question of the vendor's privilege. A vendor, it is argued, who has neglected to record his privilege, is not remediless as against subsequent mortgagees, but may still relieve himself through the resolutory condition implied in the contract of sale, and recognized in the 2539th article of the C. C., which declares, that if the buyer does not pay the price, the seller may sue for the dissolution of the sale.

If, for the purposes of the present inquiry, the general proposition be conceded, there are circumstances in this case which would render it unavailable to *Butler*, who, it seems, has threatened *Carson* with proceedings for a dissolution of the sale made by *McDonald* to *Messrs. Payne*.

If the sale by *McDonald* to the *Messrs. Payne* is to be rescinded, this cannot be done without restoring the vendor and the vendees to their original position. The dissolving condition, says the code, (art. 2040, *La condition resolutoire,*) is that which, when accomplished, operates the revocation of the obligation, placing matters in the same state as though the obligation had not existed. *La resolution replace les parties, dans l'etat où elles se trouvaient avant la vente.* Troplong, *vente*, No. 654. How is *Butler* to replace matter in *statu quo ?* He is the mere holder of one of the notes. He is not the vendor, nor any thing more than a partial representative of the rights of the vendor. But *McDonald*, the vendor, and the vendees, have done act upon act inconsistent with a resolution of the sale. They gave the mortgages to the Union Bank, which eventuated in the sale to *White*. They made a settlement of their partnership accounts and a partition in kind of the land and slaves. It is obvious, therefore, that the pretensions of *Butler* to sue for a dissolution of the original

LEFLORE
*v.*
CARSON.

LEFLORE
v.
CARSON.

sale, are unfounded, and that the apprehensions of eviction by *Carson* are unreasonable. See C. C. 2535.

It is therefore ordered, adjudged and decreed, that the judgment of the court below be reversed; and it is further ordered and decreed, that the plaintiff recover of the defendant the sum of $5,016, with interest from the 1st of January, 1850, until paid, at the rate of eight per cent per annum, and costs in both courts ; and that the mortgaged property, described in the act of sale and mortgage between *A. Halsey* and *James G. Carson*, annexed to, and made part of plaintiff's petition, be seized and sold, to satisfy the judgment aforesaid in favor of the plaintiff.