On Motion to Dismiss the Appeal.
BREAUX, C. J.
Appellee moves to dismiss, the appeal.
The grounds of the motion are:
That, the judge had no authority to grant the order of appeal. That the appeal bond was not received by the proper officer, the clerk, and that his deputy was without authority to receive and file the bond. That all the proceedings were had on and subsequent, to January 4, 1911, after the parish of Evangeline had been created and her officers had taken charge of the affairs of the parish. That the court was opened in the parish of Evangeline on the 2d day of January, 1911.
There need be little said in deciding this motion.
[1] The cause was legally brought in the-parish of St. Landry. Nothing occurred after trial in that parish requiring the transfer of the case to the new parish of Evangeline. The court of original jurisdiction had jurisdiction to grant the order of appeal, and the clerk of that court had authority to receive the bond and return the record to this court.
The motion to dismiss is overruled.
On the Merits.
On the merits it appears that plaintiff, Latour, and defendant Guillory are brothers-in-law. They were on friendly terms until some months after defendant conceived the idea of shielding from the action of creditors the tracts of land described in plaintiff’s petition.
The lands are within the limits of Ville Platte, a town in the parish of Evangeline, *573 until recently within the limits of the parish of St. Landry.
Plaintiff is a physician who practices his profession in the parish of Vermilion, at some distance from his former home and the situs of the lanas now in dispute. We infer from the pleadings that he had little time and less inclination to attend to his interest in these lands. He readily accepted the advice of his brother-in-law, and the first act of plaintiff was to donate to his sister (defendant’s wife) the three tracts of land in question. He donated all his rights to the land. The condition was that his father was to have the usufruct of the property for his life. The donation was signed by the donor and two witnesses.
Below the signature the following is written:
“Sworn to and subscribed before me, the undersigned authority, on the day and date written.”
And below these, the document was signed by the notary.
As it resulted in the end, it can scarcely be said that in effect the donation was onerous.
The husband of the donee, defendant Guillory, lost all confidence in this act of donation as a starting point to enable him to defeat creditors of plaintiff, in the interest, as he states, of the father of plaintiff, who was an elderly man and had no home save the home which he occupied on this land. Defendant then sought to obtain a sale direct; but this, plaintiff refused. Afterward, at the instance of defendant, plaintiff gave him a procuration authorizing him to sell and dispose of these lands.
Plaintiff appointed defendant O. E. Guillory his agent, authorizing him to sell or incumber the property described and pay debts assumed by Guillory for him.
After this power of attorney had been given, a counter letter was signed and placed in the possession of plaintiff by defendant. The counter letter is not dated. It states:
We shall annul and furnish certificates of annulment in due time to Emil Latour of all judgments bearing against plaintiff on account of two notes he executed to Alexis Latour merged into a judgment.”
In the event they failed in this, they were-to cause to be resold for the interest of La-tour, the plaintiff, half of the property which! he (Latour) had given, quoting from the counter letter, “to my husband, O. E. Guillory.”
This counter letter was written evidently to be signed by Mr. and Mrs. Guillory, and Mrs. Guillory, it was intended, doubtless, was the one to be bound by the counter letter; but O. E. Guillory, only, signed it.
On the 16th day of November, 1905, by-virtue of the power of attorney above mentioned, O. E. Guillory, agent, sold the property to his brother-in-law, Alexander Miller, for the stated price in the deed of $3,000 cash.
Attacking these different acts, plaintiff begins by charging that defendant Guillory availed himself of the act of donation, not legal in form, as he contends, and also availed himself of the power of attorney to unlawfully deprive him of his property. Plaintiff avers particularly that he never intended to transfer the property, and that defendant took advantage of him.
In the year 1905, when the first acts were-signed, it is said by defendants that the lands were of no great value, and their recovery would not have justified an expensive lawsuit. Since 1908, these lands have enhanced very much in value, from a few hundred dollars to about $25,000, it is said.
Plaintiff, wishing to re-enter into the possession of his asserted land, called upon defendant for a transfer back to him of all titles. The defendant refused, and it resulted in a breach of all friendly relations-This suit followed.
The first claim of importance secured by mortgage on plaintiff’s property grows out. *575 ■of a judgment obtained years ago by E. Marquez & Co., which was duly recorded. This is the claim which gave concern to defendants; also, some concern to plaintiff. They sought to avoid payment of it by suits in■stituted for that purpose. In the end, Guillory himself became the owner of the judgment. Within the 10 years after its date, it was duly revived — this was many years ago— Toy the one who was at that time the owner of the judgment. In the year 1905, just before the 10 years had elapsed, it was again revived at the instance of a Mrs. Cole, transferee and owner, and again it was duly inscribed. In this last judgment of revival, it is stated as follows:
“That said judgment be revived and continue in force for ten years from the date of the last revival.”
And, evidently by an oversight, it is added:
“From the date of the last revival on said .judgment on May 20, 1895.”
From this defendant will have it that the judgment was revived only for a short time, and not for a period of 10 years. •
Instead of 1895, as stated in the judgment, it should have been 1905. It was evidently a slip of the pen, or owing to an oversight, that 1895 was made to take the place of 1905. This oversight is made to appear by the judgment itself, which states that the judgment is revived for 10 years — of course, from its date. Moreover, the petition sufficiently explains the oversight and shows beyond question that it was intended to revive the judgment from the date of the judgment, and not from 1895. In consequence, the judgment bears against the property in question.
This judgment was sold to a Mr. Cole, the husband of the transferee before mentioned. The latter died owner of one-half of the property above referred to, which had passed out of the plaintiff, also leaving the Marquez judgment as a part of the assets of his succession. Both became the property of his widow, Mrs. Cole.
Plaintiff had remained the owner of the undivided half of the property. This one undivided half he sold to his father, Emil Latour, taking therefor the two notes of his father, representing the purchase price. In time these notes became subject to the plea of prescription. The defendant, who had charge of the property after 1905, advised that suit be brought to resolve the sale. It was brought in the name of the plaintiff against the father in resolution of the sale, thinking that thereby they would shake the confidence of the owner of the Marquez judgment, secured by mortgage, as before stated, to such an extent that he would be willing to sell it for a small amount. This action was resorted to, it was said, in order to enable them to buy the judgment and retain the home of Emil Latour, the father.
It is also stated that plaintiff refused to have anything to do with any steps to the end before mentioned; that he did not choose to expend any money on the advice of his brother-in-law, the defendant.
The defendant seems to attach some importance to the following testimony and seems to think that it gave him some right to the property in question:
This is an extract from the evidence of the brother of plaintiff, Arthur Latour:
“Q.. What reply did Dr. Latour make to these different suggestions to him that he should interest himself in the matter?
“A. He always said he. would not do anything with it.
“Q. Did he say why?
“A. Because he said he didn’t think there could be anything done further. He called me off aside on the gallery of Austin Fontenot’s office, telling me that Guillory must have been a fool to try and get him interested in that affair; that he didn’t have any money to throw away on that property. That is the time he threw the records- on the desk and called me off aside, and we could not get him interested at all.”
*577 [2] We have not found in all of this anything in the nature of a title. Still, defendant seems to rest confidence upon this want of interest in the property manifested by plaintiff. In search of the title claimed by defendant to the property, we take up the act of donation. It was not in authentic form. As evidence of that fact, we insert the deed in extenso.
“Act of Donation.
“State of Louisiana, Parish of St. Landry.
“Know all men by these presents, that I, Emil A. Latour, now a resident of Oassinade, Vermilion parish, Louisiana, in consideration of the natural affection which I bear to my youngest sister, Laura Latour, wife of ;0. E. Guillory, now a resident of Eunice, St. Landry parish, La., and in memory of the endeared affection which my father, Emil Latour, and my dead stepmother, Cora Latour, bear, and have borne, to my sister Laura, also conditional that my father, Emil Latour, enjoy the usufruct for life of the hereinafter described and mentioned property; Now, therefore, in consideration of the foregoing reasons, I do donate, transfer, alienate and subrogate forever unto my said sister, Laura Latour, wife of O. E. Guillory, all of my rights of claim as beneficiary from whatsoever cause, reposing and depositing unto her all of my rights of ownership withal to that property described and enumerated in the act of mortgage, sale and transfer which I made to my father, Emil Latour, dated July 19th, A. D. 1893 (eighteen hundred and ninety-three), and which act of transfer appears in the recorder’s office of St. Landry parish as No. 34,-868 (thirty-four thousand eight hundred sixty-eight).
“In testimony whereof, I have hereunto signed my name in the presence of two competent witnesses, who have signed with me, this fifth day of September, A. D. 1905.
“[Signed] E. A. Latour.
“Witnesses:
“[Signed] Joseph Leg’er.
“[Signed] J. L. Murrell.
“Sworn to and subscribed before mo, the undersigned authority, on the day and date above written. [Signed] A. Lormand,
“Notary Public,
“Acadia Parish.”
The position was taken by plaintiff that the deed was not signed before the notary and two witnesses. Some time after it had been signed, as a private act, parties appeared before the notary and authenticated their signatures by making oath. Civil Code, art. 1536; Maduel v. Tuyes, 31 La. Ann. 485; Spanicr v. De Voe et al., 52 La. Ann. 581, 27 South. 174; Leibe v. Hebersmith, 39 La. Ann. 1050, 3 South. 283; Delogny v. Smith, 3 La. 418.
A valid donation is one passed before a notary and two witnesses. Civil Code, art. 1536. There was an irregularity in drawing up this deed.
[3] But the contention on the part of the defendant is that there was no necessity of drawing up the act in due form because the. donation was an onerous donation.
To this, we can only answer that, in order that it may be considered onerous, the value of the property must exceed the charges by one-half in order that the donation may be considered an onerous one.
The testimony, if it shows anything upon the subject, shows that the charges do not exceed one-half the value of the property, The usufruct mentioned in the donation was not onerous in so far as the donee was con' cerned. By the terms of the deed, the donor gave the property to defendant’s wife and the usufruct to his father. The donee only had to recognize the usufruct. But even that was not done by her. The usufruct never was accepted; the property has long since been disposed of, and not a thought was given to the usufruct. As to the claim, which the donee was to pay and have erased from the record, it is spoken of by the witnesses as worthless. In fact, if there was anything onerous about the donation, it was not considerable and received little attention from the defendants.
We. have stated that the title was not in the asserted donee. She abandoned all claims to the land under the donation. She subsequently bought the property from her father, as will be referred to again in a moment.
We go a step further, at this time, to inquire if defendant, subsequent to the act of *579 donation (null and abandoned), copied above, acquired tbe property. We are not of tbe opinion that he acquired the property in subsequent acts.
The extract of the testimony of Alexis La-.tour, plaintiff’s brother, only shows plaintiff’s unwillingness to make advances carrying out plans suggested by O. E. Guillory for the purpose of exciting the apprehension of the holder of the mortgage judgment about the validity of his judgment and thereby inducing him to sell it for a very small amount.
It remains: The words copied do not amount to a title. Plaintiff only refused to comply with defendant’s request as shown by the testimony; whether reasonable or unreasonable is not important at this point.
[4] Another phase of the case is: Dr. La-tour and Alexander Miller sold the property to Mrs. Guillory. The question arises: For whom was the property bought by Mrs. Guillory? Was it for her account or that of the community? We readily answer: The wife not being separate in community, the presumption is that it was bought for the community, of which O. E. Guillory is head and master. There was no separation of property between the husband and wife. We shall treat this purchase as a community purchase and the responsibility of parties accordingly, in the absence of proof showing the contrary whether property she bought was bought by the community.
The act of sale in question was signed by plaintiff and Miller. The latter, it appears, had no interest in the property at the time of the sale. It only had been transferred by Guillory to Miller, as security in a transaction exclusively between Guillory and Miller. The plaintiff was the owner. The price of the property, in this sale^-Miller and Dr. La-tour, the plaintiff, to Mrs. Guillory — was $5,-000, represented by five notes of $1,000 each. This, between vendee, Mrs. Guillory, and her said, yendors, was a serious transaction ; it cannot be considered in any other light, because of this purchase by Mrs. Guillory. It follows that the community, represented by her husband, in which she must be held to have bought the property, is indebted to plaintiff in the sum of $5,000, purchase price of this property, less the amount which plaintiff owes to the community.
Before going further into the examination of the different issues, we will state that in the year 1907 Guillory, the defendant, obtained a deed of sale of the property from Emil Latour, plaintiff’s father. This deed was introduced in evidence on the trial of the case. No objection was made to its introduction, although it was not pleaded in any way.
In argument, another point made, was stated that the property had never reverted from the father, Emil Latour, to the son, Dr. Latour, and that, in consequence, this sale by Emil Latour to Guillory, the defendant, is binding, and it is now his property, having been subrogated to all the rights of the father. This transaction must be further explained at this time.
[5] It will be remembered that in 1893 Dr. Latour sold the property to his father, Emil Latour, and took notes representing the purchase price. These notes, it is said, were prescribed. Notwithstanding that they were prescribed, they were placed by plaintiff in charge of O. E. Guillory in order that the latter might bring suit against the father, and to have the sale rescinded as before stated, for the nonpayment of the price. This he did in accordance with the plan which had been adopted at defendant Guillory’s instance, to cloud the title and to compel the creditors, as they thought, to stand off and sell cheap. In other words, to be direct ■ — another way devised to pay old debts.
The suit was brought, the sale was rescinded, and the title returned to Dr. Latour.
O. - E. Guillory’s position now is that the *581 title was prescribed and that Dr. Latour obtained nothing, but that he (defendant) subsequently acquired title from Emil Latour in 1907, because, as he states, he holds from the owner, the father before mentioned.
[6] Guillory, who managed everything in this matter, is not in a position to avail himself of that defense. He cannot maintain his right to the property under the 1907 deed, just mentioned — Emil Latour, father, to him. In addition, his answer absolutely precludes him from any such defense.
This is an excerpt from the answer relating to this claim:
“Further answering, with respect to the power of attorney from the plaintiff to the respondent Oliviel E. Guillory, your respondent shows that said act was executed and mandate given because the said plaintiff had a right of action against his father, Emil Latowr, for the annulment and setting aside of an act of sale of the said property, made on duly 18, 1893, by the said E. A. Latour to his said father, Emil La-tour, for the nonpayment of the purehase price. * * * Your respondents were ignorant of the fact that the said right of action was personal to the plaintiff, and that upon being advised by their attorney, Mr. Dubuisson, the power of attorney was secured in order to enable the respondent O. E. Guillory to bring suit for the annulment of said sale, which was done by suit No. 17,532 of the docket of this court, in which judgment was rendered on the sixteenth day of ■November, 1905.” (Italics ours.)
[7] There is another turn in the course of the suit. Plaintiff asks to have the sale made by defendant O. E. Guillory, under the power of attorney, annulled as fraudulent, null, and void.
That act has no effect; that is, the act by O. E. Guillory to Miller, the property having been transferred by plaintiff and Miller to defendant’s wife, or rather to the community, as above stated. Plaintiff having thus ratified the sale, by signing as vendor to Mrs. Guillory, he is concluded by his own act. He accepted the property without a word of objection ; that is, he must be held to have accepted it, for he and Miller transferred it to Mrs. Guillory.
In the second place, plaintiff in the prayer of his petition asks that there be judgment against all of the defendants annulling the sale from him to Laura Latour, defendant Guillory’s wife, for nonpayment of the purehase price.
A rescission for nonpayment of the purchase price cannot be decreed in this suit. Plaintiff is not in a position to successfully claim a rescission of the sale. He, owing to his peculiar management, is not in possession of the notes identified with the act of sale representing the price; he cannot tender them back.
Conceding that, under the circumstances, rescission might be decreed without a tender of these nofes, he owes to defendant Guillory amount of the Marquez judgment, amounts paid by the latter for his (plaintiff’s) account. There must be a settlement made and the indebtedness due by plaintiff to Guillory credited on the price. For these reasons, there can be no rescission in this suit.
The amount of the price, interest due, and 10 per cent, fee of attorney stipulated in the deed, the amount subject to deduction of sum found to be due to O. E. Guillory by plaintiff, to wit, $160 with 5 per cent, interest from the time each item became due. Defendant will have to account for the notes before mentioned, or their value. The vendor’s privilege and mortgage by which the notes are secured are recognized as written. At this point, we will state that defendants, argue, at some length, that the sale cannot be rescinded as prayed for by plaintiff because plaintiff has not made a tender of the consideration received by him.
As a rule of law that is quite true. It has no application, as we have not rescinded the contract of sale as prayed for by plaintiff. We have decided that defendant must pay the notes, interest, and attorney’s fee secured by mortgage and vendor’s privilege as stipulated in the deed by plaintiff *583 and Miller to Guillory and wife. This price must be iiaid, less the amount due by plaintiff to defendant and wife, to be hereafter ascertained' and fixed in the district court.
The issues of fact are conflicting. The different attempts made to discover a way to get rid of all debts have not proven successful; they have given rise to a number of questions.
Before concluding, we summarize as follows:
The Marquez judgment has been timely revived.
The rescission of sale, plaintiff to Emil Latour, is binding on the defendants.
The sale of O. E. Guillory to Alexander Miller is of no effect, as the property was subsequently sold by plaintiff to Mrs. O. E. Guillory, which inures to the benefit of the community.
The community owes the price, interest, and attorney’s fee, less the amount due by plaintiff to defendants.
For reasons stated, it is ordered, adjudged, and decreed that the judgment appealed from is avoided, annulled, and reversed.
It is further ordered, adjudged, and decreed that plaintiff recover judgment for the amount of $5,000 with interest; plus 10 per cent, fee of attorney, stipulated in the deed, less deduction of amount due by plaintiff to defendants.
It is further ordered, adjudged, and decreed that defendants account for the notes identified with the deed of sale; that these notes and the price stated in the deed are .-secured as to their payment by privilege and .mortgage as herein stated.
The ease is remanded to the district court :in order to ascertain and fix the amount due Iby plaintiff to defendants; consideration received by him from. defendants and amount ■of judgment and mortgage held by defendant, .if any be found, due by the former to the latter. Costs in both courts to abide the final decision of the suit.