Statement of the Case.
MONROE, C. J.
Mrs. Cora Roy, second wife of Emile Latour, Sr., died in January, 1904, leaving five children, issue of her marriage ; and in September, 1905, pursuant to a scheme to which plaintiff herein, defendant, and the surviving husband of the decedent appear to have been parties, and by means of a consent proceeding in, and judgment of, court, the community in which the decedent had been a partner was illegally devested of certain real estate, and the title thereto was placed in the name of defendant, and then in the name of the plaintiff’s wife, and then in the name of a brother-in-law, after which there was a sale of the property for $5,000 to plaintiff’s wife and partner in community.
Defendant then became dissatisfied with the arrangement, and brought suit to recover the property, or the price stated in the last instrument of conveyance, and this court gave -judgment therein in favor of plaintiff (defendant in the present suit) and against the' defendant (plaintiff in the present suit) for $5,000, with interest, costs, and attorney’s fees, as the price for which the matrimonial community, of which said defendant was a member, had purchased the property, but re *145 manded the case, for the ascertainment and adjustment of certain claims whih he had set up. Latour v. Guillory, 130 La. 570, 58 South. 341. The matter was then again litigated, and again brought to this court, and it was held that defendant (plaintiff herein) was entitled to set off against the judgment for $5,000, with interest, etc., certain specified amounts, with interest, and certain costs, which were to be thereafter ascertained. Latour v. Guillory, 134 La. 341, 64 South. 130. In the meanwhile, four of the (five) children and heirs of Mrs. Cora (Roy) Latour had brought suit for their respective interests, inherited from the deceased mother, in the property in question (or each for an undivided one-tenth of an undivided one-half), and on the same day (January 5, 1914) that the judgment last above mentioned was rendered this court handed down another opinion (affirming a judgment of the district court) in which it is said:
‘‘The case was tried, and there was judgment in favor of each of the plaintiffs for an undivided one-tenth of the undivided half interest in the three tracts of land acquired by O. E. Guillory from Emile A. Latour, and there was judgment in favor of O. E. Guillory and against the plaintiff for $4,625, for value of improvements, etc. There was also judgment in favor of O. E. Guillory against Emile A. Latour in the sum of $1,256.31, damages,, and the further sum of $2,500, with 8 per cent, interest from April 26, 1906” (being one-half of the purchase price for which Guillory had been condemned).
Referring to the “proceeding” which we have mentioned, whereby the title to the property in question was acquired by defendant herein, the court said:
“The revendication was based on a prescribed note for $400; and the proceeding and judgment worked a fraud on the rights of the plaintiffs.”
And, again referring to the judgment of the district court, it was said:
“We do not think that the plaintiffs, appellees, have any good reason to complain of the judgment, which in effect sets aside the judgment of revendication as far as they are concerned. * * * The judgment rendered in favor of O. E. Guillory against E. A. Latour will operate pro tanto as a set-off against the judgment heretofore rendered by the Supreme Court, in favor of Latour.” Latour v. Latour, 134 La. 345, 347, 64 South. 134, 135.
On March 14th following defendant herein caused execution to issue under the judgment for $5,000, less the credits allowed by this court in the two cases first above mentioned, but failed to credit the $1,256.31 and $2,500 for which he was condemned by the judgment last above mentioned; and the defendant in the writ thereupon brought this suit, enjoining the seizure, on the grounds:
(1) That it calls for an amount in excess of that to which the plaintiff in the writ is entitled.
(2) That since the rendition of the judgment he has been evicted from four-tenths of the property for the price of which it was rendered.
(3) That since the rendition of said judgment and his said eviction an administrator has qualified in the succession of Mrs. Cora (Roy) Latour, who is seeking to subject the property seized to the payment in part of the debts due by the community formerly existing between the decedent and her husband, and that plaintiff is therefore disturbed in his possession and fears eviction therefrom; that he has notified defendant herein, as his vendor, of the demand made by said administrator, but the notice has been disregarded.
It was shown on the trial that, about the time of the issuance of the injunction-, defendant’s counsel instructed the sheriff to credit the writ of fieri facias, the execution of which was enjoined, with the two amounts of $1,256.31 and $2,500, with interest, and to notify the defendant in execution that he had done so; and it was also shown that the instructions were obeyed, and that defendant (plaintiff herein) claimed no further credits than those then allowed (added to those which had already been allowed). I-t was further shown, by the judgments of this court, that the amounts last above mention *147 ed were awarded plaintiff as compensation for the eviction of which he here complains. It was shown, upon the other hand, that on January 15, 1914 (ten days after the two judgments of this court of January 5, 1914, were handed down), plaintiff transferred to Isom J. Guillory, his younger brother, who is employed by him as a clerk and stenographer, what is known in this litigation as the “Marquez judgment,” and that on the same day Arthur Latour, one of the heirs of Mrs. Cora (Roy) Latour, opened his mother’s succession, alleging that she had left an estate consisting of the undivided half of the property which has been the subject of this litigation, and praying that an inventory be taken and letters of administration issued, etc. An undivided half interest in said property was accordingly inventoried, the letters were issued, and the administrator then proceeded to file a statement of alleged debts of the community, with a petition in which he avers that the plaintiff herein “claims to be the owner, and in possession, of one-half of the above described property, all of which belonged to, and was in the possession of, said community at the date of its dissolution,” that said property passed to said O. E. Guillory burdened with the community debts, and should be called back into the community unless the surviving husband and partner, or said “third possessor,” should elect to discharge that burden, amounting to $4,331.19%.
The first item on the statement, entered as “Due to O. E. Guillory,” is one of $88, with interest, for money advanced to pay the funeral expenses of Mrs. Latour. The second item, entered as “Due to Isom J. Guillory,” is the “Marquez judgment,” amounting, with interest, to $2,350.59. The third item, entered upon the statement as “Due to heirs of Mrs. Cora Roy,” is one amounting, with interest, to $832, described as “the amount tendered by them to Dr. E. A. Latour, on April 7, 1912, in payment of a community debt due by said estate to him for the purchase price of the community lands now under administration, and which amount tendered, upon being refused by him, was deposited in the registry of the court for his account * * * and allowed to him by the court. * * * ” The fourth and last item, also entered under the title “Due to heirs of Mrs. Cora Roy,” represents a claim for reimbursement of paraphernal funds, said to have been advanced by the decedent, Mrs. Cora (Roy) Latour, to the community that existed between her husband and herself.
It was shown that the statement in question was prepared- by plaintiff’s brother, clerk, and stenographer (to whom he trans- ' ferred the “Marquez judgment”), in that part of plaintiff’s office which was occupied by the' gentlemen thus triply connected with plaintiff, and that plaintiff collaborated in its preparation, to the extent, as he testifies, of figuring “to ascertain whether the amounts were correct,” and “to the end of seeing that it was not excessive, according to the record.” It does not appear that plaintiff, who had objected to the homologation of the inventory, on the ground that the property included therein belonged in part to him, made any objection to the proposed sale by the administrator of the same property until after the adjudication to him and he was called upon to pay the price. It was further shown that the items of $2,350.59, “Marquez judgment,” and $88, funeral expenses, were pleaded by plaintiff as set-offs against defendant’s claim for $5,000, and were allowed by this court in the judgment rendered in the case of Latour v. Guillory, 134 La. 341, 64 South. 133, as follows, to wit:
“It is therefore ordered that the judgment be reversed and amended, so as to allow the defendant the following amounts as set-offs against the judgment in favor of the plaintiff as rendered by the Supreme Court:
*149 “(1) The sum of $250, with legal interest from December 1, 1907, for one-half of the cost of satisfying the Marquez judgment. * * # *
# “(4) Funeral expenses, $88, with legal interest from same date” (September 5, 1905).
Opinion.
[1,2] 1. It is conceded that the property here in question, of which an undivided half interest was inventoried in the succession of Mrs. Latour, belonged, as a whole, to the unliquidated community which had existed between that lady and her surviving husband; and, it is settled jurisprudence that, notwithstanding her death, the community of' acqugts and gains between husband and wife continues, by a fiction of law, to exist for the purposes of its liquidation and the payment of the community debts; that such liquidation and payment cannot be effected in the succession of the wife; and that the administrator of the wife’s succession has no power to provoke the sale of community property for the payment of community debts.
In Succession of Hooke, 46 La. Ann. 353, 15 South. 150, 23 L. R. A. 803, it appeared that Harriet Hooke, wife of Joseph H. Ash-bey, died intestate, leaving an estate consisting of both separate and community property; that the surviving husband qualified as natural tutor of their minor children; that a creditor of the community thereafter obtained judgment, contradictorily with the surviving master thereof, for a community debt; that James H. Ashbey, having an interest in that judgment, filed a petition in the succession of Harriet Hooke, alleging that he was a creditor thereof, and that Joseph H. Ashbey, since qualifying as tutor, had taken no steps therein and refused to settle and acknowledge claims against said succession, and praying that he (James H. Ashbey) be appointed administrator. The application was opposed, but, after trial, the judge ordered an administration, though he appointed Joseph H. Ashbey administrator. This court, in reviewing the case on appeal, said:
“In our opinion the judge a quo erred. Under the circumstances in this case he should not have ordered an administration. It is settled that, notwithstanding the actual dissolution of a matrimonial community of acquSts and gains by the demise of one of the spouses, it has a fictitious existence subsequently for the purposes of liquidation and payment of community debts. Succession of Dumestre, 42 La. Ann. 411, 7 South. 411; Factors’ & Traders’ Ins. Co. v. Levi et al., 42 La. Ann. 434, 7 South. 625; Landreaux et al. v. Louque, 43 La. Ann. 234, 9 South. 32, and cases therein cited; Succession of Cason, 32 La. Ann. 792. The judgment being a conceded debt, we see nothing to prevent its owner or owners from proceeding against Joseph H. Ashbey, who was the head of the community, and against the community property, for the satisfaction of the judgment.”
In Hewes v. Baxter, 46 La. Ann. 1284, 1285, 16 South. 198, it was said:
“Defendant’s theory, that when the community of acquits and gains is dissolved by the death of the wife, and her succession has been opened and a testamentary executor appointed thereto, that the community property passes into the possession of and under the control of this executor, and the community has to be settled and liquidated in the wife’s succession by and through an administration of the executor, is not correct.”
In Verrier v. Sheriff, 48 La. Ann. 725, 19 South. 680, after reviewing the jurisprudence, the court said:
“Having made a most careful and studious examination of adjudicated cases, in which this court has dealt with the rights of community creditors and of the means which the law has accorded them for the enforcement of their claims against the property of the community after it has been dissolved by the death of the wife, we feel safe in announcing our conclusion to be fully in accord with the view expressed in Hewes v. Baxter and Succession of Hooke, supra. And the result of this conclusion is that the administrator of the succession of Mrs. Jeanne Claude Devillard, defendant herein, is without right or authority to take or assume possession or control of the property held in community between the deceased and the plaintiff as her surviving husband and usufructuary, or to sell same, in the course of the administration thereof, for the purpose of paying debts of the community, albeit they are debts due by the community to the separate paraphernal estate of the deceased wife. Such administrator has the right, of course, to administer the separate estate and property of the deceased wife, in so far and to the extent *151 that same does not trench upon the community, in which she had only a residuary interest and for the debts of which she was not personally bound. This administration involves the right of the wife’s succession representative to take any and all necessary proceedings against the surviving husband for the collection of any indebtedness of the community to her separate estate; but it does not confer upon him the power to make sale of property of the community for that purpose, in her succession.”
See, also, Succession of Fernandez v. Della Rosa, 50 La. Ann. 567, 23 South. 457.
[3] 2. Other reasons why no administration should have been ordered in the succession of Mrs. Latour, and why the attempted sale of the property here in question was unauthorized, are: That the succession was not shown to have owed any debts, and that four of the (five) heirs accepted it unconditionally, by bringing suit for the recovery of their respective interests in the property inventoried, and had obtained a judgment of this court decreeing them to be the owners, entitled to possession of those interests, whilst the husband of the remaining heir, who did not join in the suit of her coheirs, was alleged by the administrator to be in possession, under title, of the entire property. Hobson v. Peake, 44 La. Ann. 383, 10 South. 762; Succession of Graves, 50 La. Ann. 435, 23 South. 738; Willis v. Scott, 33 La. Ann. 1026; Weathers v. Sheriff, 52 La. Ann. 932, 27 South. 538; Rush v. Landers, 107 La. 560, 32 South. 95, 57 L. R. A. 353.
[4] 3. The injunction should not have issued against the entire execution upon the allegation that the seizure was for an amount in excess of that authorized by the judgment, but should have been limited to the excess. Rowly v. Kemp, 2 La. Ann. 360; Morgan v. Driggs, 3 La. Ann. 125; Cobb v. Hynes, 4 La. Ann. 150; Jewell v. Thorn, 6 La. Ann. 95.
And the writ should not have been sustained (and was not sustained) on that ground, inasmuch as the amount for which the seizure was made was reduced to the proper amount before the trial.
[5] 4. Nor should it have been sustained (nor was it sustained) on account of the eviction under the judgment of this court, since plaintiff in injunction was compensated for that eviction by the judgment whereby it was decreed. Latour v. Latour, 134 La. 345, 348, 64 South. 133.
The reasons given by the judge a quo for sustaining the injunction are as follows:
“Plaintiff’s third contention, I think, according to the evidence in this record, is serious, and, without going into the decision of the rule sued out in the estate of Cora Roy, I think the plaintiff has reasons to fear the threatened eviction which he urges to obtain this injunction.
“The Supreme Court, in the suit of Arthur Latour and others v. Dr. Emile Arthur Latour, said:.
“ ‘We do not think that the plaintiffs, appellees, have any good reasons to complain of the judgment, which in effect sets aside the judgment of revendication as far as they are concerned. As to the moneyed demand of plaintiffs against their father, it is a debt against the community, which, as yet, has never been settled and liquidated according to law.’
“It is in pursuance of this judgment that the administrator of the estate of Cora Roy is seeking to subject all the property, sold by Dr. Latour to Guillory, to the payment of the community debts due by said estate.
“The counsel contends that he seized Guillory’s undivided one-tenth interest in the property owned by him; that his title to this one-tenth is clear, but there is no doubt that the judgment obtained by Dr. Latour against Guillory represents the entire purchase price of the property which he sold to Guillory, with full guarantee of title, and there is no doubt that Guillory can force him to make good the title he has given him before he can be made to pay the judgment obtained against him for the purchase price thereof.
“It is for these reasons, and because the law and the evidence are in favor thereof, ordered, adjudged, and decreed that the injunction sued out herein by the plaintiff against Dr. Latour and the sheriff, prohibiting and restraining them from advertising and selling or attempting to advertise and sell the property described in the plaintiff’s petition, be maintained and perpetuated.”
[6] Pretermitting (as already disposed of) the question of the legality of the administrator’s appointment, and of his authority to sell community property, or to concern himself with the payment of community debts, save such as may be due to the sue- *153 ■cession that he is administering, it was shown on the trial that, of the four items of alleged indebtedness 6 y the community, for the payment of which he has assumed to sell community property, including therein the entire assets of the succession of the deceased wife and partner in community, two —that is to say, the items of $88 (expenses of funeral) and $2,850.59 (the “Marquez judgment”) — were pleaded, as set-offs, by plaintiff in injunction, who then owned them, in the suit of Latour v. Latour, supra, and were allowed by this court, the one for the whole amount, the other in part, and the remaining two items are entered upon the administrator’s statement as “Due to heirs of Cora Roy.” If, then, it is possible to suppose that the two items first mentioned are •again to be accounted for to the plaintiff, or his transferee, the question remains: Upon what authority, or theory, does the administrator assume to sell the property of the “heirs of Cora Roy” in order to pay debts due to her succession? And the answer is that he possesses no more authority to sell that property for that purpose than he has to sell the property of the community, within which it is for the present included. And plaintiff in injunction must be held to have known, when he collaborated in the preparation of the administrator’s statement, for the purpose, as he testifies, and with the ■evident effect, of establishing the basis for the administrator’s action, that the basis so •established could not support the action proposed, and hence that the action, when taken, could not threaten him with eviction, or, in legal contemplation, disturb his possession of the subject thereof, but would be brutum fulmen, accomplishing nothing and threatening nothing; and for the plaintiff, •after thus establishing the unsound, not to say absurd, basis upon which the administrator was to proceed, thereafter to enjoin his proceeding, on the ground that it disturbs or threatens him, is merely to trifle with the administration of justice.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, the writ of injunction sued out by plaintiff dissolved, plaintiff’s demands rejected, and this suit dismissed.
It is further decreed that O. E. Guillory, plaintiff herein, and Theogene T. Ottego, surety on the injunction bond, be, and they are, condemned, jointly and severally, to pay to Emile A. Latour, defendant herein, interest at the rate of 10 per cent, per annum upon the amount of the judgment enjoined, to run from the date of the issuance of the injunction until final payment, and 10 per cent, upon said amount as statutory damages. It is further decreed that plaintiff pay all costs.