MONROE, C. J.
Plaintiff alleges that it bought from defendant, at an agreed price, a lot of rice which wás then in a warehouse and was, thereafter, to be weighed and delivered, and that defendant refused to execute the contract; wherefore it 'brought this suit, caused the rice to be sequestered, and prays that it be decreed to be the owner, entitled to .possession of the same on payment of the price so agreed upon. Defendant obtained the release of the rice on a forthcoming bond, and moved to dissolve the writ of sequestration, on the ground that allegations upon which it was issued were untrue, and, the motion having been sustained, plaintiff has appealed. It appears from the evidence that William Wright, plaintiff’s buyer, called at defendant’s store, between 5 and 7 o’clock in the evening of October 1, 1913, and made defendant different offers for his rice, and that his offer of $3.25 per barrel was accepted, upon the condition that the rice should be taken out of the warehouse that evening, or, at farthest, e.arly next morning, and loaded upon two cars which were then standing on the siding at the station and were the only available cars in the place; that Wright went, accordingly, to see Ellis Hoffpauir, who had control of the ears, and who told him that one of them was leaking, and, so far as he was concerned, that he (Wright) could have it, but that the railroad agent had told him (Hoffpauir) that he could not use it, as he (the agent) would not sign the bill of lading for it. As to the other car, Hoffpauir said that he would not be able to let Wright know whether he could have it until the afternoon of the following day (and as it turned out, he was not then able to accomodate him). Wright, however, without telling Ellis Hoffpauir what he intended to do about the cars, went back to defendant’s store and said to defendant; “Well, I have got the cars and I got the rice” (or words to that effect), to which defendant replied: “Provided you load *1098 the rice out the first thing in the morning;” and, to Wright’s suggestion that they shake hands, he said, “It is no use shaking hands unless you get the cars.” Whereupon, however, they shook hands. There were several disinterested witnesses who were present and who have given about the same testimony concerning the negotiations thus referred to. One of them, Judge Hoyt, testifies as follows:
“Tell the court what that conversation was, Judge?
“A. Well, we understood it that Mr. Hoffpauir and Mr. Wright were talking about making a sale of some rice, and the question came up — he had been trying to make the sale for some time — and the way I understood it was that he had to have the cars to load at once, or next morning .at the furthest—
“Q. Did Mr. Hoffpauir make any stipulation about the cars?
“A. Yes, sir; he spoke about the cars — to have them ready to load the rice.
“Q. Did Mr. Wright leave to see about the cars? What did Mr. Wright say about the cars when he came back?
“A. When Mr. Wright came back — the way I understood it — he said he had the cars.”
Cross-examination; “Q. Now, you cannot say exactly what was said between the two parties, Judge ?
“A. Well, I understood this, I can say that he said the rice was to be his, provided he could load the cars at once or early next morning, otherwise it belonged to the defendant in this case.”
Re-examined: “Mr. Hoffpauir said, the rice is yours, providing you get the cars and load it at once or, at furthest, next morning. The cars are here; the ears are here; and it was said as if the cars were present in town.”
Upon learning, subsequently (during the evening), from Ellis Hoffpauir what had taken place between him and Wright concerning the cars, defendant considered that Wiright had deceived him, and had brought about the hand-shaking, as upon a closed bargain, by false representations, and, meeting Wright early the next morning, he remarked to him, in passing, that he had not secured the cars, to which Wright made no reply. Defendant then telephoned to plaintiff’s manager', at its mill in another town, that the deal was off, and the manager, and Wright, acting under his authority, then made other propositions, which defendant refused to entertain, his position being that, by reason of Wright’s misrepresentation in regard to the cars, no contract resulted from their negotiation, and that he did not choose to enter into a contract with a person who had thus deceived him. Defendant’s testimony, on cross-examination, reads in part as follows:
“Q. Mr. Hoffpauir, you said, in your direct examination, that Mr. Wright told you that he had gotten the cars?
“A. Yes, sir; he did tell me that.
“Q. What did your brother [Ellis Hoffpauir] tell you?
“A. He asked me,-did you sell Bill the rice, and I said that I sold’ it, provided that he would get the cars that were then on the siding, and he said that he did not get them.
“Q. Did that have any effect on you, the fact that he had not made a correct statement to you?
“A. It did.
“Q. Did you wish to have any further dealings with him, after that?
“A. No, sir; I did not; no, sir.
“Q. Was your agreement that the rice was to be loaded in those particular cars, on account of your relations with the rice mill?
“A. Yes, sir; I told him that, after he had come back.
“Q. If he had come back and told you that he could not have the two cars, would you have shaken hands with him on the bargain and closed the sale?
“A. No, sir; I would not.”
That Wright understood that the closing of the bargain for the rice depended on his getting the cars is evident from the fact that he represented to defendant that he had succeeded in getting them, though he had not succeeded, and from further fact that, early the next morning, he told Aladin Hoffpauir, in passing his house, that his brother Gerard was a very hard fellow to deal with, and that he did not know whether he had bought the rice or not, that (to quote the language of Aladin Hoffpauir): “I have the rice, if I load it this morning,” or words to that effect. It is not pretended that he offered to load it that morning, or that he could have done so, either upon the two cars that had been mentioned or upon any others; the most that was proposed having been to *1100 pay a part of the price and leave the rice in the warehouse until cars could he obtained. It may 'be that the parties negotiated with reference to the particular cars that were then on the siding only because there were no others available, and that, if Wright had offered, during the negotiations, to load the rice, that evening or early next morning, upon other cars, his offer would have been accepted. But, whatever may have 'been defendant’s reasons, and, whether good or bad, from the point of view, of another person, the fact remains that he made it a condition that the rice should be loaded in the two cars in question and should be moved out of the warehouse that evening or next morning, and, at the last moment, gave Wright to understand that there was to be no sale unless he should be able to comply with that condition, from which it follows that, as Wright was unable to comply with the condition, or even to load the rice upon other cars within the delay contemplated, there was no sale.
Judgment affirmed.