No. 7172

First Circuit Appeal.

FRANK G. PRUYN v. GILBERT GAY

(December 2, 1924, Opinion and Decree)

(March 3, 1925, Rehearing Granted)

(June 30, 1925, Rehearing Opinion and Decree.)

*(Syllabus by the Editor.)*

1. **Louisiana Digest, Sales—Par. 47; Obligations—Par. 76.**

An agreement to sell real estate in which it is stipulated that the "failure of the purchaser to make said payments (installments, insurance, taxes and assessments) when due shall, ipso facto without demand or putting in default and as a penalty nullify and abrogate the contract" is a promise of sale. And the further stipulation that "sums previously paid for that purpose would be considered as rentals for that property" in case of the failure to make payments agreed upon is a valid agreement which entitles the seller to have the promise of sale erased from the record.

(Article 2462 of the Civil Code. Editor's note.)

ON APPLICATION FOR A REHEARING

2. **Louisiana Digest—Sales—Par. 72.**

The stipulation in a promise of sale that payments on the purchase price and insurance were to be made at certain times and in case they were not paid at the time fixed the failure was to ipso facto nullify and abrogate the contract was for plaintiff's benefit; but such stipulations could be waived by him and renounced under Article 11 of the Civil Code.

3. **Louisiana Digest—Sales—Par. 69, 72.**

One who receives payments in less sum than stipulated in a promise of sale and made long after the expiration of the times fixed for payments and applied to the purchase price by the seller, must be regarded as an absolute waiver and renunciation by the seller of the stipulation in the contract that failure of purchaser to make the payments stipulated on time will nullify the agreement.

4. **Louisiana Digest—Sales—Par. 73.**

Under Article 2045 of the Civil Code the resolutory condition in a contract cannot be enforced unless the parties can be placed in the same condition in which they were at the time the contract was entered into.

5. **Louisiana Digest—Sales—Par. 73, 85.**

Where the plaintiff by selling a part of the property covered by a promise of sale has made it impossible for him to make restitution to the defendant for the purpose of placing the parties in the same condition which they were at the time the contract was made as contemplated by Article 2045 of the Civil Code, judgment must be equitably given under Article 21 of the Civil Code to defendant on his complying with the conditions of the contract.

Appeal from the Twenty-second Judicial District Court, Parish of East Baton Rouge. Hon. W. Carruth Jones, Judge.

This is a suit for the cancellation of a promise of sale of immovables.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed. But on a rehearing judgment reversed.

Sanders & Gottlieb, of Baton Rouge, attorneys for plaintiff, appellee.

Dewey J. Sanchez, Jos. A. Loret, of Baton Rouge, attorneys for defendant, appellant.

MOUTON, J. On June 10, 1928, plaintiff and defendant entered into the following contract.

"State of Louisiana Parish of East Baton Rouge."

"For and in consideration of Seventeen Hundred, Seventy Five no/100 dollars, of which I, F. G. Pruyn, have received in cash the sum of two Hundred and no/100 dollars, and the remainder of which is to be paid to me in quarterly installments of Forty Six and 25/100 dollars each due re-

spectively on the 10th day of September 1918, and quarterly thereafter at 444 Lafayette Street, Baton Rouge, La., with eight per cent per annum interest on each installment from maturity until paid. I hereby agree to sell to Gilbert Gay the following described property to wit:

"Lots 2-3 and 4 of Square 1 Mc Grath Heights with improvements thereon, it is distinctly understood that this promise is made upon the following conditions;

"First—That the contemplated purchaser shall pay all taxes and assessments of any kind that may be due on said property before they become delinquent; and

"Second—That said purchaser pay all the above installments and all insurance promptly and punctually when they become due. The failure of said purchaser to make said payment when due shall *ipso jacto* without demand or putting in default and as a penalty nullify and abrogate this contract; in which event all sums paid to said Pruyn shall be considered as rental for the use of said property, and any building or other improvements on said property shall remain and become the property of said Pruyn.

"The said purchaser, being here present, accepts this agreement under all the conditions above set forth."

It will be observed that after declaring in contract that Pruyn had received $200.00 in cash, and fixing therein the quarterly payments to be made by Gay, the agreement referring to Pruyn, says: "I hereby agree to sell to Gilbert Gay the property which is described." Immediately thereafter the contract says: "It is distinctly understood that this promise is made upon the following conditions: First—That the con templated purchaser shall pay all taxes etc." as appears in the contract above reproduced.

The words used in the instrument: "I hereby agree to sell" and "this promise" give a clear insight into the intention of the parties in entering into this contract. Pruyn promised to do what? Obviously to sell otherwise there would have been no reason for the use of this word "Promise."

Again, the agreement refers to Gilbert Gay as the "contemplated purchaser". If a sale or its equivalent had been intended, the use of such language would have been unnecessary and out of place.

It will also be noticed that Gay does not bind himself specifically to pay the installments or insurance stipulated for in the contract. Pruyn would not have been entitled thereunder to a specific performance as Gay had not bound himself to the performance of the conditions mentioned in the agreement. The contract provides also that if Gay failed to pay punctually, the installments and insurance, the contract would be abrogated, *ispo jacto*, without the necessity of a default and that all the payments made on the installments and for insurance would be considered as rentals for the use of the property. This provision in the agreement shows that Gay retained, by implication, the right of not paying all of the installments and insurance, but if he exercised this privilege, for his failure to comply punctually with this requirement of the contract, the sums previously paid for that purpose would be considered as rentals for the property. This provision, aforesaid, was in the nature of an option, which shows that the agreement was a mere promise of sale and was not a sale.

In the case of S. J. Campbell vs. Richmond Insurance Company, 156 La. 455, 100 South. 679, a contract embodying practically the essential features characteristic of those appearing in the agreement involved in the present case came up for consideration to this court. In that case we held the contract to be a promise to sell and not a sale. The Campbell case went up to the Supreme Court on a writ of review and our judgment was there affirmed. 156 La. 455, 100 South. 679; see also: Peck vs. Bemiss, 10 La. Ann. 160; Clark vs. Comford, 45 La. Ann. 502 12 South. 763; J. C. Trichel vs. Home

Insurance N., 155 La. 459, 99 South 403; Cavil vs. Trichel, 156 La. 136, 100 South 249; Broadwell vs. Raines, 34 La. Ann. 677; Foreman vs. Saxon, 39 La. Ann. 1117; City of Baltimore vs. Parlange, 23 La. Ann. 365; Baldwin vs. Merey, 41 La. Ann. 1105, 6 South. 796;; Joffrion vs. Gumbel, 123 La. 391, 48 South. 1007; Thompson vs. Duson, 40 La. Ann. 712 5 South. 58; Oeschner vs. Keller, 134 La. 1098, 64 South. 921. There was no conveyance of title here. A subsequent act would have been necessary to transfer ownership to defendant. It was therefore incumbent upon defendant to pay the installments punctually to avoid a forfeiture as was provided in the agreement. It is shown that defendant was tardy in making the payments, and thus violated the conditions of the agreement, repeatedly. Plaintiff, at different times, accepted payments of some of the installments after their maturity, but in this, plaintiff, as the evidence shows was prompted by a spirit of forebearance, but at no time waived his rights of cancellation of the contract for failure on the part of defendant to meet his obligations under its terms.

To the contrary, it appears that plaintiff insisted on payment by defendant at the dates stipulated in the agreement, and that he notified defendant that he would demand a cancellation if defendant did not live up to the conditions and stipulations of the agreement. The evidence shows that plaintiff before instituting a suit for cancellation of the agreement sold a part of the property in question. Counsel for defendant contends that when a vendor thus sells a part of the property deeded to the first vendee, the amount received by him from the second sale should be applied to the purchase price of the first sale. The principle contended for by counsel may apply where a sale has been made by a vendor of property of which he thereafter sells a portion

to another purchaser. This is, however, not the case here, as there was no sale made in the first instance to defendant. Plaintiff had executed in his favor a mere promise to sell, had remained the owner of the property, and had the absolute right to sell any part of it to a subsequent vendee. It is stipulated in the contract that the failure of defendant to pay at the dates specified should *ipso facto* abrogate the agreement, as a penalty for its violation and without the necessity of a demand or of formally putting in default. We do not understand that counsel for defendant disputes the binding effect or legality of such a stipulation. Defendant having failed to meet these requirements of the contract, forfeited all his claims thereto, and plaintiff was entitled to its cancellation, and erasure from the public records as was decreed below.

---

ON APPLICATION FOR A REHEARING

ELLIOTT, J. The plaintiff, Frank G. Pruyn, and the defendant, Gilbert Gay, entered into a written contract dated June 10, 1918, whereby Frank G. Pruyn for and in consideration of $1775.00, of which the sum of $200.00 was paid in cash, agreed to sell to Gilbert Gay lots Nos. 2, 3 and 4 of Square No. 1, McGrath Heights Addition to the City of Baton Rouge, with the improvements thereon. The balance of the price was to be paid in installments of $46.25 each, commencing September 10, 1918, and quarterly thereafter.

The agreement then provides that the promise is made upon the following conditions: That the contemplated purchaser shall pay all taxes and assessments of every kind that may become due on said property before they become delinquent; all the quarterly installments and all insurance promptly and punctually as they become due. The failure of the purchaser to make said payments when due,

to *ipso facto*, without demand or putting in default and as a penalty, nullify and abrogate the contract; in which event all sums paid were to be considered as rent for the use of the property. Any buildings or other improvements thereon to remain and become the property of said Pruyn, etc.

The plaintiff, Pruyn, alleging that defendant, Gilbert Gay, had violated the contract by not making payments as stipulated, he brought suit to have the contract annulled, cancelled and set aside. He annexed to and made part of his petition a statement of account showing the payments which said Gay had made under the contract, the amount and date of each.

The defendant, Gay, for answer, alleges that plaintiff condoned his payments by accepting same under the contract before and after they were due and in sums as paid. That he accepted one on January 3, 1923, for $50.00. That plaintiff violated the contract on June 4, 1923, by selling lot 4 to Joe Pizzllo. He claims that the price which plaintiff received from Joe Pizzllo, $600.00, should be applied to their contract as a payment. Avers that on September 28, 1923, he tendered to plaintiff the sum of $250.00 on the contract; which sum tendered and the said $600.00 received from Joe Pizzllo applied to the contract payments, the same were overpaid at the time of the suit.

Alleges and prays for damages against the plaintiff on account of the sale of lot No. 4 that plaintiff's demand be rejected; that plaintiff be condemned to specific performance and prays for general relief, etc. Judgment was rendered in plaintiff's favor as prayed for. Defendant appealed.

As for the character of the contract, we think our first conclusion was correct. It is a promise to sell, dependent on suspensive conditions.

The conditions are that certain payments are to be made at specified times with taxes and insurance before they become delinquent.

The account annexed to plaintiff's petition shows the payments made under the contract, the date and amount of each. The total sum paid was $209.50. This account is not disputed.

The first payment was to have been made after the contract was signed on September 10, 1918, and quarterly thereafter until the balance of the purchase price was fully paid.

The account shows that some installments were paid ahead of time and in excess of the sums due up until about say July 16, 1921, after which there was no more paid until April 21, 1922, when $15.00 was paid. The next payment was on June 2, 1922, when $10.00 was paid. The next was on January 3, 1923, when $50.00 was paid; since then nothing has been paid.

On June 4, 1923, or about six months after the receipt of the last payment, the plaintiff, Pruyn, without notice to defendant and without his consent, sold and delivered to Joe Pizzllo lot 4 covered by the contract for $600.00.

Defendant, learning of this, had the contract recorded. Previous to that time the contract had not been recorded.

The evidence shows that plaintiff paid taxes and insurance on the property.

Nothing of that kind appears to have been paid by defendant; but the sums which plaintiff received from defendant ahead of time and in excess of the sums due in 1918, 1919, 1920 and 1921 equitably extinguished and covered the taxes and insurance paid by Mr. Pruyn; but commencing, say September 10, 1921, payments fell behind.

The plaintiff notified defendant verbally that he had fallen behind; that he must bring his payments up to date, else he

would cancel the contract; but it was not done. Plaintiff's contention is that defendant's failure to pay installments, taxes and insurance as they fell due, under the contract, ipso facto nullified and abrogated the contract. That all payments received since the delinquencies must be regarded as rent; that lot 4 must be looked on as having belonged to him at the time it was sold and the proceeds as his property, and that he became the unconditional owner of the other two lots and of the buildings and improvements thereon in the same way and at the same time.

The intent at the time of the contract was that there was to be no sale unless the installments, taxes and insurance were paid as they fell due under the contract; but plaintiff did not stand on the contract in that respect any more than the defendant.

If plaintiff had stood on the contract and after the first delinquency had demanded and exacted rent for plaintiff's property as the owner thereof, the penalty stipulated in the contract would have stood; the judgment appealed from would in that event have been correct and our first opinion and decree would be now reinstated. 24 A. 235; Baker vs. Baker, 125 La. 969, 52 South. 115; Baldwin vs. Young, 47 La. Ann. 1466, 17 South. 883; Barber Asphalt Pav. Co. vs. St. Louis Cypress Co., 121 La. 152, 46 South. 193; Standard Milling Company vs. Haffpauir, 139 La. 1095, 72 South. 748.

But plaintiff did not do that. He instead accepted payments on the purchase price as shown by the account which he himself kept, after they were delinquent in date and amounts, and particularly as late as April and June, 1922, and January, 1923, and applied these payments to the purchase price himself long after the expiration of the time when they were due under the contract.

Having done that, plaintiff could not, without the consent of the defendant, treat the contract as if it had no life or existence, and these various sums thus received as rent on property unconditionally belonging to him.

The stipulation that payments on the purchase price and taxes and insurance were to be made at certain times and in case they were not paid at the time fixed the failure was to ipso facto nullify and abrogate the contract was for plaintiff's benefit; but such stipulations could be waived by him and renounced. C. C. Art. II. And by receiving so many payments in less sums than stipulated and made long after the expiration of the times fixed for payments and the application of them to the purchase price by the plaintiff himself must be regarded as an absolute waiver and renunciation on his part of the stipulations in question.

Plaintiff having long prior thereto waived and renounced the penalty stipulated in the matter of payments, etc., he had no right in June, 1923, to sell lot 4 without the consent of the defendant. The penalty having been waived and renounced in the way stated, the law, C. C. Arts. 2045, 2046 and 2047, etc., and Nos. 1911, No. 2 and 1912 must be reckoned with. The contract could not in that situation be treated as dead and without existence. It could not be utterly disregarded by the plaintiff and lot 4 sold, but had to be sued for and the defendant heard from before anything could be done.

The resolutory condition in the contract, moreover, cannot be enforced unless the parties can be placed in the same condition in which they were at the time the contract was entered into. C. C. Art. 2045; Bermudez vs. Union Bank of Louisiana, 7 La. Ann. 65; Evan George vs. E. A. Knox and Husband, 23 La. Ann. 354; Heirs of Allen Castle vs. Mrs. E. S. Floyd, et al., 38 La.

583; Henry Bryant vs. Mrs. E. R. Stothart, 46 La. Ann. 485, 15 South. 76; Lawson vs. Conolly, 51 La. Ann. 1753, 26 South. 612; Ragsdale vs. Ragsdale, 105 La. 405, 29 South. 906; Latour vs. Guillory, 130 La. 570, 58 South. 341; Lewy vs. Wilkinson, 135 La. 105, 64 South. 1003; and Louisiana Digest, Vol. VI, p. 521, Sec. 73, etc.

And this cannot be done because plaintiff has made it impossible by selling lot 4.

We based our first opinion and decree on the case, 156 La. 455. The form of the contract in that case was very much like the one before us in the present case. But on re-examination we find that case was decided on the issue whether the title in question was a title in fee simple and the court found that it was not. The case cited, 155 La. 459, was also different from the situation we now have in hand.

The Art. C. C. 2047 has been considered by the Supreme Court in a number of cases. The situation in each must be taken into account and the matter equitably decided. Turner vs. Collins, 2 Martin N. S. 605; Newman vs. Eldridge, 107 La. 320, 31 South. 688; Murray vs. Barnhart, Pitts, vs. Same, Graham vs. Same, 117 La. 1023, 42 South. 489; Watson vs. Feibel, 139 La. 375, 71 South. 585.

The case last mentioned is the leading case on the subject. The eleventh clause of the syllabus reads:

"* * * The dissolution of the contract of sale never became the creditor's absolute right, since Article 2047 gives the court power to allow a reasonable time for performance after suit."

Clauses 24 and 27 are also pertinent to the present situation. As restitution cannot be accomplished in this case, we

will in conformity with the provisions of the law, C. C. Art. 21, render the judgment which appears to conform with natural right.

It is therefore ordered, adjudged and decreed that our first opinion and decree herein be set aside, the judgment appealed from is annulled, avoided and reversed, and the demand of the plaintiff, Frank G. Pruyn, is refused and rejected. It is further ordered, adjudged and decreed that the contract of June 10, 1918, between said Pruyn and Gilbert Gay is still in force and effect between them. The $600.00 received by said Pruyn from the sale of lot 4 described in the contract is applied as a payment on the installments under the contract as of date June 4, 1923. That the tender to plaintiff of $250.00 on September 28, 1923, should have been accepted as a payment on the installments under the contract and if the sum is still declined that same be now paid into the treasury of the court to the credit of said Pruyn as of date September 28, 1923. That when these payments on the contract installments have been applied and credited, computed from the time when defendant first fell behind, then if defendant, Gilbert Gay, shall pay all future installments on the contract price and taxes and insurance as stipulated in the contract, until the contract price has been fully paid, then the said Frank G. Pruyn shall execute in favor of the said Gilbert Gay an unconditional title as agreed to the lots 2 and 3, with the buildings and improvements thereon, called for by the contract.

That the plaintiff and appellant pay the cost in both courts.

LECHE, J., concurs in the decree.