No. 976.

SUCCESSIONS OF M. S. AND POLLY CASON. ON OPPOSITION OF ELIZABETH THAMES, AND OPPOSITION AND INTERVENTION OF MURRELL & BARNES.

The widow of a second marriage, in necessitous circumstances, is entitled to the $1000 homestead upon the property of the Community of acquets and gains which existed between the deceased husband and his first wife; and the said widow's privilege is superior in rank to the special mortgage of the creditors of that former Community.

APPEAL from the Parish Court, parish of Claiborne. *McClendon,* Special Judge.

Jas. F. Taylor for Opponents and Appellants :

The community of a previous marriage must be settled and the debts paid before the widow of a subsequent marriage can claim the thousand dollars gratuity out of the property of the first community. C. C. 2402 ; 29 An. 583 ; 31 An. 495 ; 21 An. 520 ; 6 An. 441 ; 5 N. S. 568.

John Young and John S. Young, contra.

The opinion of the Court was delivered by

FENNER, J. M. S. and Polly Cason were husband and wife. Polly Cason died in 1877. M. S. Cason married Elizabeth Thames in 1878, and shortly thereafter died, leaving her a necessitous widow. The succession of M. S. and Polly Cason was then opened. The property inventoried was, nearly all, property of the community of acquets and gains which had subsisted between M. S. and Polly Cason. The most important part of the property was a tract of land belonging to the community, upon which Murrell & Barnes held a mortgage for a community debt. The contest here is between Murrell & Barnes, claiming as creditors of the community, to be paid by preference out of the community property, and Elizabeth Thames, widow of the second marriage, claiming to be paid $1000 as widow in necessitous circumstances, by preference over all creditors.

There is no dispute about the essential facts, viz.: 1, that Elizabeth Thames is a widow in necessitous circumstances, entitled to the homestead claim ; 2, that Murrell & Barnes are creditors of the community of the first marriage ; 3, that the property sought to be subjected to their respective claims was property of this last mentioned community.

The theory of the counsel for Murrell & Barnes, urged with great ingenuity and plausibility, is based on the following propositions :

First. That, as laid down by this Court in Childers vs. Johnson, 6 An. 441, " This community, like other partnerships, must be considered as an ideal being, *être moral,* distinct from the persons who compose it, having its rights and obligations, its assets, its liabilities, its debtors, and its creditors."

Second. That, therefore, the property belonging to the community, like the property of an ordinary partnership, does not belong to the partners, as individuals, and does not pass into, or become part of their respective successions at their deaths ; but that their successions acquire nothing except the *residuum* which may remain after settlement of the community debts. Suc. Staffer, 21 An. 520.

Third. That the claim of the necessitous widow only attaches to the property of the husband's succession, and, therefore, only to his in-

terest in the *residuum* which may remain of community property after paying the community debts.

If this theory were correct, it would operate not only to shut out the second widow's claim under the facts of this particular case ; but it would equally operate to shut out the claim of every necessitous widow from attaching to the property of an insolvent community, and would thus render the widow's homestead-act practically inoperative in nearly every case.

We cannot maintain a doctrine leading to consequences so inharmonious with the humane purposes of the law, and with the mode of execution thereof, which has prevailed without question, from the time of its adoption. The fallacy of the theory consists in subjecting the community of acquets and gains to all the rules and principles governing partnerships. The Code is quite careful in informing us that " the community of property created by marriage is not a partnership." Rev. C. C. 2807.

While there are points of resemblance between this community and partnership, there are very marked and distinctive differences.

During the existence of the community, the husband is practically the owner of the community property, which he may sell, dispose of, and encumber, by onerous title, at will, and without the concurrence of his wife. He is personally responsible for all of its debts. At his death it enters into and forms part of his succession, to be therein administered and devoted to the payment of the community debts, which are also his personal debts. The wife has no personal liability for the debts, and has no interest whatever in an insolvent community. In case of the dissolution of such a community by the prior death of the wife, her succession or heirs have no valuable interest in the community property.

If, as in this case, the community be admittedly insolvent, they have no interest, and, consequently, no right, to provoke its liquidation. As to the community creditors, they are under no necessity to provoke its liquidation through the medium of the wife's succession, because it is settled they may disregard the wife's interest, and proceed directly against the community property in the possession of the husband, contradictorily with him alone. 26 An. 230, 391, 294.

The property, therefore, remains in the possession and control of the husband, subject to the claims of the community creditors, and at his death falls into his succession, and is liable to the necessitous widow's privilege, after exhaustion of his separate estate, just as it is liable to funeral charges, expenses of last illness, and other privileged claims, in the rank fixed by law.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed at appellant's costs.