## Succession of HARPER.
### No. 1493.

Court of Appeal of Louisiana. First Circuit.
Oct. 3, 1935.

See, also, 182 La. 55, 161 So. 18.

E. L. Stewart, of De Ridder, for appellant.

Kay & Kay, of De Ridder, for appellee.

LE BLANC, Judge.

The question at issue in this case may be stated as follows: Is that part of the community property in which the interest of a first wife's heirs attaches after her death, subject to the claim of the widow by a second marriage who is admittedly in necessitous circumstances?

James Elmore Harper died in the early part of the year 1933. He had been married twice and from his first marriage there were born seven children who were all majors at the time of his death. There had

been some property accumulated during the first marriage, all of which is recognized as property belonging to the community existing because of that marriage. After the death of his first wife, the decedent was married to the opponent herein. There was no property acquired during, nor were there any children born of, this second marriage. Neither the first wife nor the decedent left any last will or testament.

There were a few debts due by the decedent's succession, but sufficient funds were derived from the sale of his undivided half of the property to pay the same and a small amount left over to be applied to the opponent's claim as widow in necessitous circumstances. She now contends that the administrator of her husband's succession should be made to sell the other undivided half of the property in order to pay her claim. The district judge held that the undivided half of the community property which the first Mrs. Harper's children acquired from her in full ownership at the time of her death, subject only to her own debts and those of the community, was not liable for the claim of the widow by second marriage, in necessitous circumstances, and from a judgment rejecting her demand, the opponent has taken this appeal.

The law making provision for a widow who is left in necessitous circumstances is found in article 3252 of the Civil Code. By the terms of the article, she is *"entitled to demand and receive from the succession of her* [the deceased] *husband"* a sum, which, added to the amount of property owned by her in her own right, "will make up the sum of one thousand dollars, and which amount shall be paid in preference to all other debts, except those secured by the vendor's privilege on both movables and immovables, conventional mortgages, and expenses incurred in selling the property." (Italics ours.)

Whilst during the existence of the marital community the husband is practically the owner of the community property which he administers at his pleasure and may even alienate "by an onerous title, without the consent and permission of his wife" (Civ. Code, art. 2404), it is, however, provided by the terms of article 2406, Civ. Code, that, at the dissolution of the marriage, "the effects which compose the partnership or community of gains, are divided into two equal portions between the husband and the wife, or between their heirs."

In the earlier jurisprudence there seems to have been some conflict in construing article 2406, especially with regard to the exact time at which the interest of the heirs of the deceased husband or wife attached to their half of the community property. There was some doubt, for instance, as to whether their ownership came into existence at once upon the death of their deceased parent, or had to await a liquidation of the community, during which time the surviving spouse was at liberty to sell the property in order to settle the affairs of the community. Whatever doubt may have theretofore existed, however, seems to have been put at rest by the Supreme Court in the case of Tugwell v. Tugwell, 32 La. Ann. 848, from which we quote the following:

"To give the article of the Code referred to * * * the construction warranted by some of the decisions of this Court, a number of which have been cited by counsel for defendant, would be in a great measure to destroy the force of the article, and almost to deny any right under it whatever to the surviving wife or her heirs; or if any right is recognized, it is so undefined, and its exercise clogged with so many conditions as to render it virtually impracticable.

"To set at rest this vexed question, we distinctly announce that, construing the articles of the Code upon this subject in accordance with what we conceive to be their plain and express language, we hold that when the community of acquets and gains is dissolved by the death of the wife, the respective interests of the surviving husband and of the deceased wife attach at the moment of its dissolution to the property of the community, subject to the payment of the community debts."

This holding has been ever since consistently adhered to in all subsequent decisions. In Bossier v. Herwig et al., 112 La. 539, 36 So. 557, 560, the court said:

"The fact that this interest [that of the daughter of a deceased mother in an undivided one half of the community property] may be acquired subject or subordinated to the payment of the community debts does not change the fact of her having title to that extent. The fact that debts may absorb the community property does not make the title conditional or contingent. This court has repeatedly held that, when the community is dissolved by the death of the wife, the interests of the wife's heirs at once attach." Numerous decisions are cited.

From Ramsey v. Beck, 151 La. 190, 91 So. 674, 675, we quote:

"And it is a rule equally well settled that, at the moment of the death of the husband, the title to one-half of the community property immediately vests in his heirs and the other one-half vests in the surviving spouse. Tugwell v. Tugwell, 32 La. Ann. 848; Succession of Dumestre, 42 La. Ann. 411, 7 So. 624."

From the law as laid down by these decisions, it is clear, therefore, that when the first Mrs. Harper died, title to an undivided one-half of the community property which had been acquired during her marriage with her husband, the decedent herein, vested immediately upon her death in her seven children who survived her. It was not a conditional or contingent title. Whilst the property itself might have been subjected to the payment of any debts which the community may have owed, title thereto nevertheless vested at once in these seven children. How, then, can that property be classed as property now belonging to the succession of her deceased husband? And still, as we have already noted, by the very terms of the article of the Code which gives his widow in necessitous circumstances a claim for $1,000, it is only from the succession of her husband that she is entitled to demand and receive it.

It would seem that the foregoing considerations would suffice to dispose of the question at issue, but the opponent, claimant herein, strenuously contends that her demand is supported by the decision of the Supreme Court in the case of Successions of M. S. & Polly Cason, 32 La. Ann. 790, on which she has placed her entire reliance. While it is true that from a general statement contained in the syllabus of the decision as reported, the inference might be drawn that the widow in necessitous circumstances is entitled to demand her $1,000 from the property of the community of acquets and gains which existed between herself and her deceased husband, in all cases, it is observed, upon reading the decision itself, that the contest there was between the widow and certain mortgage creditors of the first community, and not one, as here, between the widow and the heirs of the first wife, who, as shown by the various decisions cited, had acquired a vested interest in their mother's share of the community property at the time of her death. What the court decided in that case, as we view it, was that the widow had a claim superior to that of the mortgage creditors on the property of the first community. The fact that there were no heirs of the first wife, in so far as the opinion shows, whereas in this case there were heirs whose rights had come into existence and who had acquired title to their mother's undivided half of the community property at the moment of her death, presents a very essential difference between the two cases. We may add that the opinion in the case relied on by the opponent contains certain expressions which may appear favorable to her contention, but they do not seem to us to have been necessary for a decision of the issue therein presented, and in our opinion it would be difficult indeed to reconcile their import with the holding of the Supreme Court in the various decisions herein cited regarding the status of community property after the death of one of the spouses. At any rate, we do not consider the decision as authority on the direct issue that is presented in the case now before us.

We wish to add further that to the extent that the decision of this court in the case of Danna v. Danna (La. App.) 161 So. 348, in which Succession of Cason, supra, was cited as authority, is inconsistent with the views herein expressed, the same is overruled.

The opponent had further objected to the amount placed on the administrator's account as attorney's fees, and the lower court reduced the same from the sum of $75 to $55. Counsel for the administrator contends that he is entitled to the original amount of $75, whereas counsel for the opponent maintains that $55 is still an excessive amount in view of the size of the estate. We believe that the amount as allowed by the district judge is fair and reasonable and we are not disposed to disturb it.

For the reasons herein stated, it is now ordered that the judgment appealed from be, and the same is hereby, affirmed, at the costs of the appellant.