## BECK v. BECK et al.

### No. 5653.

Court of Appeal of Louisiana. Second Circuit.

April 29, 1938.

Dhu Thompson, of Monroe, and Melvin C. Stout, of Delhi, for appellant.

Scarborough & Barham, of Ruston, for appellee.

TALIAFERRO, Judge.

The sole issue tendered by this appeal is whether the privilege accorded a widow in necessitous circumstances, against the assets of the succession of her deceased husband, is lost or is prescribed because she does not protect her rights by demanding a separation of patrimony within three months after the heirs have unconditionally accepted the succession, as is provided by Article 1444 et seq., of the Revised Civil Code.

J. Wilson Beck died intestate while a resident of Lincoln parish on March 21, 1932, leaving a widow, Mrs. Kate Beck, the plaintiff, in necessitous circumstances, and an estate therein of small value consisting of personal property and an undivided half interest in eighty acres of land described as the NW¼ of NE¼ and NE¼ of NW¼, Section 26, Township 20 North, Range 2 West.

By a previous marriage there were two children, majors when Beck died, to-wit, Joseph S. Beck and Mrs. Mary Addie Green, defendants herein, who owned jointly by inheritance from their mother the other half interest in said land. These heirs tacitly accepted the succession of their father unconditionally, went into possession of said land, and divided the personal property with plaintiff. The succession was not formally opened by any court proceeding. On August 26, 1936, Mrs. Green sold to Joseph S. Beck all of her interest in the land.

Plaintiff instituted the present suit on May 27, 1937. She prays for judgment in personam against the defendants for $1000.-00, with recognition of her privilege, as widow in necessitous circumstances, on the said real estate of the succession. Defendants deny her right to hold them personally responsible for the claim asserted by her and deny that she is entitled to a privilege on the land to secure payment of said claim.

Plaintiff was awarded judgment against each defendant for $439.75, but her demand for recognition of the asserted privilege against the land was rejected, and from that part of the judgment she has appealed. Appellees ask no amendment of the judgment.

A correct decision of the issue herein turns upon an interpretation of several articles of the Civil Code.

The widow, left in necessitous circumstances, has a privilege claim against the succession effects of her deceased husband, and is due therefrom an amount not in excess of $1000.00. This is vouchsafed to her by Article 3252 of the Civil Code, in part, as follows:

"Whenever the widow or minor children of a deceased person shall be left in necessitous circumstances, and not possess in their own rights property to the amount of one thousand dollars, the widow or the legal representatives of the children, shall be entitled to demand and receive from the succession of the deceased husband or father, a sum which added to the amount of property owned by them, or either of them, in their own right, will make up the sum of one thousand dollars, and *which amount shall be paid in preference to all other debts,* except those secured by the vendor's privilege on both movables and immovables, conventional mortgages, and expenses incurred in selling the property. The surviving widow shall have and enjoy the usufruct of the amount so received from her deceased husband's succession, during her widowhood, which amount shall afterwards vest in and belong to the children or other descendants of the deceased husband."

Had plaintiff asserted her rights timely against the succession, an administration thereof would have been necessary and its assets sold to satisfy her privilege claim. It is the contention of defendants that since plaintiff took no steps to enforce her claim against the succession until more than three months subsequent to its unconditional acceptance by them, as heirs, the privilege she once enjoyed to secure her claim is lost, prescribed. They rely upon articles of the Code, under the title "Of the Separation of Patrimony", and the judgment of the First Circuit Court of Appeal of this state in Danna v. Danna, 161 So. 348, to sustain their position. The following articles are pertinent:

"The creditors of the succession may demand, in every case and *against every creditor of the heir,* a separation of the property of the succession from that of the heir. This is what is called the separation of patrimony." Article 1444.

*"The object of a separation of patrimony is to prevent property, out of which a particular class of creditors have a right to be paid, from being confounded with other property, and by that means made liable to* the debts of another class of creditors." Article 1445.

"The effect of this demand, on the part of the creditors of a succession, is to cause them to be paid from the effects of the succession in preference to the creditors of the heir." Article 1446.

*"The suit of separation of patrimony must be instituted within three months from the express or tacit acceptance of the heirs; after the expiration of this term, it is not admitted."* Article 1456.

"The petition for separation of patrimony shall not be received, unless it be accompanied with the sworn declaration of the creditor or creditors parties, to it, *that they believe the heir is embarrassed with debts, and that they have reason to believe that his personal debts will absorb the effects of the succession to their prejudice."* Article 1457.

"When there is competition between the creditors of the deceased only, *and they have no privilege nor mortgage,* they have an equal right against the effects of the succession, and the property of the heir, and each receives in proportion to his debt, if there is not property enough to pay them all." Article 1462.

The primary object of a separation of patrimony, as laid down in Article 1445, is to prevent succession property from becoming responsible for the obligations of heirs of the decedent to the prejudice of the creditors of the succession, and vice versa. This evidently refers to ordinary creditors of the succession. This procedure, the codal articles seem clearly to indicate, is only appropriate when the heirs of the deceased are involved in debt or are burdened with obligations which may be enforced against them or their property. In the present case, it does not appear that the heirs of J. Wilson Beck, defendants, had any creditors when their father died, or thereafter, against whom the separation of patrimony could have appropriately been invoked. For that reason the creditors of the succession, including plaintiff, if any there were, had no cause for apprehension that the succession property would or could be so handled as to unfavorably affect their preference rights against its assets. Had plaintiff undertaken to protect her rights as a privilege claimant, whom would she have interpleaded to maintain her position? There were no creditors of the heirs and the heirs themselves are not necessary par-

ties to such a procedure. There were not two classes of creditors whose rights were to be preserved separately, as Articles 1445 and 1446, quoted above, clearly indicate must exist to provide a foundation for the exercise of such a judicial procedure. Therefore, in view of these conclusions, we think plaintiff lost nothing by not trying to invoke the law relative to a separation of patrimony.

But, conceding for the sake of argument, that we are in error in this interpretation of said codal articles, it is our opinion that defendants' position would not thereby be improved.

■ Plaintiff's claim against the succession property is secured by a privilege among the highest in rank recognized by law against succession effects. That privilege exists and is preserved and affects third persons without registration. Constitution of 1921, Article 19, Section 19; Article 3276 of the Civil Code.

It is only primed by a vendor's lien, conventional mortgage and costs of selling succession property. It operates with the same force against immovable and movable property. Civil Code, Article 3252. Therefore, its rank and efficacy against unencumbered succession assets without registration is comparable to the rank acquired by a registered mortgage, as regards the property therein described. The rights of the mortgage creditor, save for a few exceptions, are not affected through proceedings had in the succession of the mortgagor.

■ If no separation of patrimony is petitioned for within three months after the heirs have accepted the succession, the right to do so is lost. Therefrom definite results follow. The two patrimonies are blended. The accepting heirs become personally and jointly responsible for the payment of succession liabilities and such payment may be forced from his individual property. Article 1013 of the Civil Code. Unsecured succession creditors may not thereafter require that the succession property be solely dedicated to the payment of their claims. Such property, in these circumstances, becomes responsible for the payment of debts due the personal creditors of the heirs and also remains responsible for payment of the succession liabilities. At the same time, the heirs' individual creditors lose the right to demand a separation of patrimony to the end that separate property of the heirs be held segregated exclusively to the discharge of amounts due them by the heirs. In other

words, that the separate property of an heir and that which he has acquired by accepting the succession, as regards unsecured debts and liabilities, becomes alike responsible for the payment of personal debts and succession debts. But we are quite sure that when the heirs unconditionally accept a succession and assume control and dominion over its assets, cumbered by a special privilege, such as we are now dealing with, the privilege follows the property into the heirs' hands and it remains so impressed and affected until extinguished in some lawful manner; and this too, when the right to a separation of patrimony lies but has not been demanded.

■ Privilege is an accessory right, which arises from or is superinduced by the nature of the debt and which entitles the creditor to be paid by preference. Civil Code, Article 3186. It is a form of security for payment, in the instances ordained by law, not enjoyed by ordinary creditors. It may become extinct by prescription. Civil Code, Article 3277. But, as a general rule, its life is coextensive with that of the debt it is intended to secure. There is no general law governing the prescriptibility of privileges. Article 3252 of the Civil Code contains no limitation of time within which the extraordinary privilege therein made available to the widow shall be exercised. It is our thought, without definitely so holding, that in the present case, since she now has a personal right and action against defendants, the life of the privilege is coextensive with that right or the judgment recognizing same.

■ Article 1462 of the Civil Code, quoted supra, provides that creditors having no privilege nor mortgage to secure their claims against the succession accepted unconditionally by the heirs, are on equal footing, as regards the succession property and that of the heirs, when no separation of patrimony has been petitioned for. It follows therefore that claims and debts due by the succession which are secured by a privilege or a mortgage, are unaffected by the failure to demand a separation of patrimony, and this too, when the heir or heirs have unconditionally accepted the succession. This principle was approved and confirmed in White, Administrator, v. Blanchard, 19 La.Ann. 59. In that case no separation of patrimony was had. The heirs of the deceased accepted his succession unconditionally and took charge of the estate property. Four of the heirs sold to the oth-

er eight their interest in the succession property on terms of credit. Foreclosure was instituted on the purchase price notes and the affected property was advertised for sale. Plaintiffs were ordinary creditors and sought to enjoin the sale and provoke an administration of the succession. The court held that the action was not well founded; that as no separation of patrimony was procured, plaintiffs only had a personal action against the heirs. The following is taken from the syllabus of the case:

"Plaintiffs being mere ordinary creditors of the succession, their action is a personal one against each one of the heirs, to recover from him his virile share of his ancestor's debt, and plaintiffs have no legal right to stay, by injunction, the defendant's order of seizure and sale. *Even privilege or mortgage creditors cannot arrest execution, but must resort to the remedy by third opposition, to stay the proceeds of sale in the sheriff's hands until the conflicting rights of preference to the fund can be determined.*"

Defendants cite and confidently rely upon,—James, Administrator, v. Hynson et al., 21 La.Ann. 566; and Sevier v. Gordon, 29 La.Ann. 440, in addition to the Danna Case.

In the James Case, the sole heir of his parents, after the death of the father, tacitly accepted his succession and continued to operate a plantation, devolving upon him as heir. He confessed judgment to defendant, an individual creditor, under which the plantation was seized and advertised for sale. James, who had been appointed administrator of the father's succession, sought to enjoin the sale, alleging that the succession owed debts and that the seized property was its only asset. His position was not upheld because the creditors of the succession had not provoked a separation of patrimony within three months after the heir had accepted the succession. The facts of the Sevier Case are quite similar to those in the James Case, but in neither case was a privilege on the succession assets involved. Only ordinary creditors were complaining. We have no fault to find with the principle announced in these cases.

The conclusion we have reached herein on the sole issue tendered by this appeal is diametrically opposed to the Danna Case, referred to above.

For the reasons herein assigned, the judgment appealed from is amended by decreeing that the privilege accorded to plaintiff by Article 3252 of the Civil Code to secure payment of the amount awarded to her by the judgment appealed from, is not prescribed, but is in full force and effect; and it is hereby recognized to affect and operate against an undivided half interest in the Northwest Quarter of Northeast Quarter (NW¼ of NE¼) and Northeast Quarter of Northwest Quarter (NE¼ of NW¼) of Section 26 in Township 20 North, Range 2 West, in Lincoln parish, Louisiana.

And said interest in said land is hereby ordered seized and sold, according to law, to pay and satisfy this judgment and costs.