LOTTINGER, Judge.
Louvenia Washington, petitioner herein, filed suit against Isaac Washington, Jr., Willie Washington, Noah Burgess, Gladys Wade Green, and Ruth Wade Green for the sum of $1,669.64, she claiming the sum of $1,000 as widow’s portion under Article 3252 of the LSA-Civil Code, the balance representing certain preferential claims which she paid subsequent to the death of her husband Isaac Washington. She prays, in the alternative, that she be awarded the marital fourth, under the provisions of Codel Act 2382, should the Court decide that she is not entitled to the widow’s portion.
Prior to the filing of the present suit the defendants herein had been sent into possession, as heirs, of all the property belonging to Isaac Washington, Sr., which consisted of a certain tract of land which he had acquired prior to his marriage to petitioner herein, and which, therefore, did not belong to the community of acquets and gains which existed between deceased and petitioner.
The defendants filed exceptions of prescription, and no cause or right of action in the present suit, which exceptions were overruled. After trial on the issues, a judgment was rendered on October 16, *127 1958 awarding petitioner the sum of $890.-73. Following the rendition of this judgment petitioner caused a writ of fieri facias to issue against Lot 43 of Square 2 of Progress Park Subdivision, which was then owned by Isaac Washington, Jr., he having acquired same by purchase from the other heirs of his deceased father, and the said property was seized and advertised for sale at public auction.
Defendant, Isaac Washington, Jr., then filed several motions, and a rule issued therein ordering petitioner to show cause why these motions filed by defendant should not be made absolute. On February 16, 1959, judgment was rendered on the rule which provided as follows:
“It is ordered, adjudged and decreed that the rules issued herein be made absolute to the extent that upon payment by Isaac Washington, Jr., of one-third (%) of the face amount of the said judgment with costs and interest, the writ of fieri facias issued herein be recalled and cancelled insofar as it affects Isaac Washington, Jr. and the property owned by him, and that the notice of lis pendens filed herein by and on behalf of Louvenia Washington against Isaac Washington, Jr. and his property be cancelled, and that the judgment rendered herein, dated October 16, 1958 be cancelled insofar as it affects Isaac Washington, Jr. and his property.”
It is the judgment rendered on February 16th, 1959 upon which this appeal was taken by petitioner.
The facts of the case show that decedent was married twice. Of his first marriage, to Lizzie Washington, who predeceased Isaac Washington, four children were born, namely, Isaac Washington, Jr., Willie Washington, Lucille Washington and Matilda Washington. Lucille Washington, who is now deceased was represented in the present suit by her son, Noah Burgess. Matilda Washington, also deceased, was represented in the suit by her children, Gladys Wade Green and Ruth Wade Green. The succession proceedings-of Lizzie Washington and Isaac Washington, Sr. were filed in evidence in the present suit, and, in the judgment of possession thereof, the children of Lizzie and Isaac Washington were each sent into possession of an undivided one-fourth of his estate, and the grandchildren were sent into possession,, by representation, of an undivided one-fourth interest of their parents therein. A similar judgment was entered in the succession of Lizzie Washington. The assets of both successions consisted of the property against which the writ of fieri facias was executed, as stated above.
After the death of Lizzie Washington, Isaac Washington, Sr. married Louvenia Washington, the petitioner in the present suit. All property belonging to the succession of Isaac Washington belonged to the community which had existed between him and Lizzie Washington, and there was no community existing between Isaac and the present petitioner. Subsequent to the death of Isaac Washington, and prior to the filing of the present suit, Isaac Washington, Jr. purchased all outstanding interests in the immovable property of his late father from the other heirs. Subsequent to said purchase, Louvenia Washington filed the present suit wherein she alleges that she was entitled to the widow’s portion of $1,000. The Lower Court, finding that there were certain obligations owed by Louvenia to the succession of her late husband, rendered judgment in her favor in the sum of $890.73. This judgment does not recognize the widow’s portion, although the petition prayed for judgment for the marital portion.
The question brought up at this time concerns whether or not petitioner’s right to claim the widow’s portion had prescribed prior to the filing of the present suit, as well as whether or not the privilege afforded the widow would bear against the property which is now owned by Isaac Washington, Jr., particularly inasmuch as *128 the judgment of the Lower Court did not maintain and recognize the said privilege.
The first question for consideration is that of prescription, as alleged by defendants. They claim that petitioner’s rights had prescribed by virtue of the fact that more than three months had elapsed between the acceptance of the succession of Isaac Washington and the bringing of the present suit to determine whether or not petitioner is entitled to the widow’s portion. In support of their claim they cite Articles 1444 et seq. of the LSA-Civil Code dealing with separation of patrimony, as well as Danna v. Danna, La.App., 161 So. 348. It is true, that under the decision of the Danna case, the widow’s right to claim her privilege for the widow’s portion was held to have prescribed after a lapse of three months. Said holding was based on the doctrine of separation of patrimony as provided in the above mentioned Codal Articles. However an opposite holding was rendered by the Court in Beck v. Beck, La.App., 181 So. 635, wherein it was held that the prescription of three months did not apply under a factual situation which is similar to the one presented in the present case.
In the Beck case the heirs of decedent were sent into possession of the property of decedent, and certain acts of sale on the said property had been executed between the heirs. More than three months afterwards, the widow filed suit for the widow’s portion. Said suit was resisted by the defendant heirs on the basis of the Danna case as well as the article on separation of patrimony. The Court held that the widow had a privileged claim of the highest rank as set forth by Article 19, Section 19, of the LSA-Constitution of 1921, as well as Article 3276 of the LSA-Civil Code. In holding that the separation of patrimony did not apply, the Court said [181 So. 638]:
(1) “Privilege is an accessory right, which arises from or is superinduced by the nature of the debt and which entitles the creditor to be paid by preference. Civil Code, Article 3186. It is a form of security for payment, in the instances ordained by law, not enjoyed by ordinary creditors. It may become extinct by prescription. Civil Code, Article 3277. But, as a general rule, its life is coextensive with that of the debt it is intended to secure. There is no general law governing the pre-scriptibility of privileges. Article 3252 of the Civil Code contains no limitation of time within which the extraordinary privilege therein made available to the widow shall be exercised. It is our thought, without definitely so holding, that in the present case, since she now has a personal right and action against defendants, the life of the privilege is coextensive with that right of the judgment recognizing same.”
As to the articles on separation of patrimony the Court, in the Beck case stated as follows:
(2) “The primary object of a separation of patrimony, as laid down in Article 1445, is to prevent succession property from becoming responsible for the obligations of heirs of the decedent to the prejudice of the creditors of the succession, and vice versa. This evidently refers to ordinary creditors of the succession. This procedure, the codal articles seem clearly to indicate, is only appropriate when the heirs of the deceased are involved in debt or are burdened with obligations which may be enforced against them or their property. In the present case, it does not appear that the heirs of J. Wilson Bede, defendants, had any creditors when their father died, or thereafter, against whom the separation of patrimony could have appropriately been invoked. For that reason the creditors of the succession, including plaintiff, if any there were, had no cause for apprehension that the succession property would or could be so handled as to unfavorably affect *129 their preference rights against its assets. Had plaintiff undertaken to protect her rights as a privileged claimant, whom would she have interpleaded to maintain her position? There were no creditors of the heirs and the heirs themselves are not necessary parties to such a procedure. There were not two classes of creditors whose rights were to be preserved separately, as Articles 1445 and 1446, quoted above, clearly indicate must exist to provide a foundation for the exercise of such a judicial procedure. Therefore, in view of these conclusions, we think plaintiff lost nothing by not trying to invoke the law relative to a separation of patrimony.”
See also Planiol Civil Law Treatise Vol. 3, Part 2, 2170 Et Seq. Separation of Patrimony.
It certainly appears to us that the holding of the Beck case was based upon sound principles of law. The widow’s portion is secured by one of the highest privileges afforded under our laws. As stated in the Beck case the provisions for patrimony are for the protection of the ordinary creditors of the deceased. Were the Courts to hold that patrimony would apply to the privilege afforded a widow in necessitous circumstances, the protection afforded her by the Code and the Constitution would be substantially reduced. We, therefore, concur in the decision as rendered in the Beck case.
The next question for determination is whether or not the privilege of widow’s portion is actually present in this suit. This question is raised by defendants because of the fact that the said privilege was not recognized nor maintained in the judgment of the Lower Court. However, the record shows without a doubt that the suit of petitioner was based upon the widow’s portion, and it was the basis of the judgment below.
Article 3252 of the LSA-Civil Code grants to the widow in necessitous circumstances the right to demand from the succession of her deceased husband an amount of $1,000, which amount shall be paid in preference to all other debts, except the vendor’s privilege, the conventional mortgage, and expenses involved in selling the property. Article 3276 of the LSA-Civil Code, as well as Article 19, Section 19, of the LSA-Constitution provide that the said privilege does not have to be recorded. In other words, the privilege exists without the necessity of recording same. Article 3277 of the Louisiana Code provides the methods of extinction of privileges, among which is listed nothing which would show that the privilege in the instant suit has been extinguished.
In Gimble v. Goode, 13 La.Ann. 352, the Court held as follows:
“We are of opinion, that the rights granted the widow or minor children of a deceased person, * * * vest in them at the time of the death of said deceased, in the event they come within its provisions at that moment of time; their condition then in pecuniary matters, and not at any subsequent time, is to be the test of their right to any claim under the Homestead Act.”
Under the above authorities, it seems clear that the privilege afforded the widow in necessitous cricumstances came into effect immediately upon the death of her husband, provided that she met the circumstances necessary for the privilege to come into operation. The privilege was in effect, however, it was necessary for her to come into Court to show that she was a widow in necessitous circumstances, which, by necessity, would be subsequent to the effective date of the privilege. The privilege actually arose at the moment of death of her husband.
The record discloses that certain of the heirs sold their interest in the property under seizure to another heir, Isaac Washington, Jr. There are no third parties in *130 volved. When they sold their respective interests in the property to Isaac Washington, Jr., their said interests were burdened by their virile shares of the widow’s portion. It is therefore our opinion that the property in question is responsible for the payment of the privilege of petitioner.
It is, therefore, our opinion that the Lower Court erred in its decision to hold the property in question liable only for one-third of the face amount of the judgment rendered in favor of petitioner. We feel that the privilege existed on the property prior to the sale thereof by the other heirs to Isaac Washington, Jr., and that the said sales were burdened by the privilege affecting the interest of each of the vendors.
For the reasons assigned the judgment of the Lower Court will be reversed and there will be judgment herein in favor of petitioner and against defendant overruling the rules to show cause, all costs of this appeal to be paid by defendant.
Judgment reversed.