For the reasons assigned the judgment appealed from is affirmed.

127 So.2d 491

Louvenia WASHINGTON

v.

Isaac WASHINGTON, Jr., et al.

No. 45004.

Oct. 5, 1960.

On Rehearing Feb. 15, 1961.

Rehearing Denied March 20, 1961.

Joel B. Dickinson, Arnold J. Gibbs, Daniel W. LeBlanc, Baton Rouge, Norman M. Magee, Baton Rouge, and William F. Kline, Jr., Clinton, for applicant.

DeBlieux & Covert, Baton Rouge, J. D. DeBlieux, Baton Rouge, for respondent.

Joseph V. Bologna, New Orleans, amicus curiae.

HAMLIN, Justice.

In the exercise of our supervisory control (Article VII, Section 11, Louisiana Constitution of 1921-LSA), we granted certiorari to the Court of Appeal, First Circuit, in order that we might review its judgment holding that the right of a widow in necessitous circumstances to demand $1,000 from the succession of her deceased husband under Article 3252[1] of the LSA-Civil Code constitutes a privilege—which neither prescribes in three months nor three years under the provisions of the Revised Civil Code—for which the property of the succession is liable for payment.

Isaac Washington, Sr., died on June 8, 1953, survived by his second wife, Louvenia Ellis Washington; three children, Isaac Washington, Jr., Willie Washington, and Lucille Washington Burgess Williams, who died September 25, 1953, leaving as her only heir, Noah Burgess; and two grandchildren, Ruth Wade King and Gladys Wade Green. On November 10, 1954, by judgment of the Nineteenth Judicial District Court for the Parish of East Baton Rouge, the two living children and three grandchildren of Isaac Washington, Sr., were sent into possession of his property. All property owned by the Succession of Isaac Washington, Sr., belonged to the community which had existed between him and his first wife, Lizzie Leomens Washington, who predeceased him. (Because of our conclusions herein, we are not called on to determine whether the whole community or only one-half of it could be involved in these proceedings. Danna v. Danna, La. App., 161 So. 348; Succession of Harper, La.App., 163 So. 177.)

Listed in the assets of the succession was Lot Number 43 of Progress Park Subdivision, together with all of the buildings and improvements located thereon. On November 21, 1954, Isaac Washington, Jr., purchased from his co-heirs their individual

1. "Whenever the widow or minor children of a deceased person shall be left in necessitous circumstances, and not possess in their own rights property to the amount of One Thousand Dollars, the widow or the legal representatives of the children, shall be entitled to demand and receive from the succession of the deceased husband or father, a sum which added to the amount of property owned by them, or either of them, in their own right, will make up the sum of one thousand dollars, and which amount shall be paid in preference to all other debts, except those secured by the vendor's privilege on both movables and immovables, conventional mortgages, and expenses incurred in selling the property. * * *"

rights, title, and interest in this property, which bore the Number 1006 Progress Street, placing a mortgage thereon to satisfy the purchase price.

On March 11, 1957, Louvenia Washington brought suit against the heirs of Isaac Washington, Sr. She alleged that they were indebted to her in the sum of $1,669.64, composed of $1,000, a widow's portion under Article 3252, LSA–Civil Code; $269.64, a paving assessment due by Lot 43, Progress Park Subdivision, paid by her on March 25, 1954 to the Director of Finance of the City of Baton Rouge and Parish of East Baton Rouge, for which she had received a certificate of subrogation; and $400, burial expenses paid by her on June 9, 1953 to Scott's Bluff Morticians, Scotlandville, Louisiana, for the burial of Isaac Washington, Sr. Alternatively, plaintiff alleged that she was entitled to the marital portion under Article 2382 of the LSA–Civil Code, as Isaac Washington, Sr., died rich and left her relatively poor. She prayed for general and equitable relief but did not pray for recognition or enforcement of any privilege of any type or kind.

Isaac Washington, Jr., Noah Burgess, and Gladys Wade Green (hereinafter referred to as defendants)[2] filed an exception of prescription under Articles 1456[3] and 3538[4] of the LSA–Civil Code and exceptions of no cause of action and no right of action, which were overruled.

Defendants answered in the form of a general denial.

Isaac Washington, Jr., reconvened, averring that plaintiff was indebted to him for $1,850.

On October 16, 1958, the trial court awarded plaintiff $890.73, stating in its judgment:

"After considering the law and the evidence, arguments of counsel and the brief submitted, the Court is of the opinion that plaintiff is entitled to judgment on main demand in the amount of One Thousand and no/100 ($1,000.00) Dollars, plus the sum of Two Hundred, Sixty-Nine and 64/100 ($269.64) Dollars, for reimbursement of payment of paving liens on the property, less a credit for the value of the property owned by her at the time of the death of decedent of Two Hundred, Thirty-One and 01/100 ($231.01) Dollars, and less a further credit of One Hundred, Forty-Seven and 90/100 ($147.90) Dollars, owed by her to the defendant

---

2. Willie Washington died on or about November 8, 1957. No mention is made of Ruth Wade King.

3. "The suit of separation of patrimony must be instituted within three months from the express or tacit acceptance of the heirs; after the expiration of this term, it is not admitted." Art. 1456, LSA–C.C.

4. Article 3538 of the LSA–Civil Code provides for the prescription of three years on certain types of accounts.

for rent of the premises after the date of death of Isaac Washington, Sr."[5]

After the rendition of the above judgment, plaintiff secured the issuance of a writ of fieri facias against the Progress Street property, supra, for its execution. Defendant Isaac Washington, Jr., deposited in the registry of the lower court $325.35 (alleged to represent one-third of the principal, interest, and costs of court due under the above judgment), and filed pleadings which he titled: "Motion for Discharge From Writ of Fi Fa Issued by Clerk of Court Against Isaac Washington, Jr., and Motion for Recall, Withdrawal and Cancellation of Writ of Fi Fa Issued by Clerk of Court Insofar as It Affects Isaac Washington, Jr., and Motion for Issuance of Rule Nisi Ordering Plaintiff to Show Cause Why Sum Deposited in Registry of Clerk of Court Should Not Be Accepted as Full Payment of All Sums Owed Under Judgment Rendered in Above Numbered and Entitled Matter, and Motion for Cancellation of Lis Pendens Filed by Plaintiff."

On trial of the above pleadings, the district court found that since plaintiff did not pray for recognition of any privilege on the property of the Succession of Isaac Washington, Sr. and since the judgment, supra, rendered in her favor neither granted recognition of any privilege nor condemned the defendants jointly and in solido,

each defendant was only liable for his or her virile share of the judgment.

On February 16, 1959, Isaac Washington, Jr., also filed a motion to deposit costs amounting to $55.34 in the registry of the court, praying that after all legal proceedings had, he be discharged from further payment of any and all other costs incurred in the matter.

On February 16, 1959, the trial court rendered the following judgment:

"It is ordered, adjudged and decreed that the rules issued herein be made absolute to the extent that upon payment by Isaac Washington, Jr. of one-third (⅓) of the face amount of the said judgment with costs and interest, the writ of fieri facias issued herein be recalled and cancelled insofar as it affects Isaac Washington, Jr. and property owned by him, and that the notice of Lis Pendens filed herein by and on behalf of Louvenia Washington against Isaac Washington, Jr. and his property be cancelled, and the judgment rendered herein, dated October 16, 1958, be cancelled insofar as it affects Isaac Washington, Jr. and his property."

On March 9, plaintiff filed a supplemental petition, in which she prayed for judgment "against Isaac Washington, Jr., Noah Burgess, and Gladys Wade Green, recognizing the judgment for the full sum of $890.73,

5. $1,269.64 less $378.91 equals $890.73.

with legal interest thereon from the date of judicial demand until paid, and for all costs of these proceedings as a lien and privilege specified under Article 3252 of the Louisiana Civil Code as amended, that the petitioner's lien and privilege resulting from the recognition of the judgment herein on all the property herein above specified be enforced, that the said property be sold, if necessary to satisfy said judgment, and that petitioner's claim, interest and costs, be paid by preference and priority over all creditors of said defendants, out of the proceeds of said sale."

To plaintiff's supplemental petition, Isaac Washington, Jr., filed exceptions of no cause and no right of action and an exception of Res Judicata.

On May 27, 1959, the trial court sustained and maintained the exceptions and dismissed plaintiff's supplemental petition at her costs.

On May 11, 1959, the trial court rendered an "Amended Judgment on Rule", in which it ordered that the judgment of October 16, 1958 be cancelled insofar as it affected Isaac Washington, Jr. and his property, namely, Lot Number 43, Square 2, Progress Park, East Baton Rouge Parish, Louisiana, and authorized and directed the Clerk of Court to make such cancellation. The minutes of court recite that an order of suspensive and in the alternative a de-

volutive appeal was entered from the judgment of May 11, 1959. An appeal bond was furnished on May 18, 1959. The opinion of the Court of Appeal states that it is the judgment rendered on February 16, 1959 upon which this appeal was taken.

The Court of Appeal [6] overruled the rules to show cause brought by Isaac Washington, Jr., stating that in its opinion the lower court erred in holding the property in question liable only for one-third of the face amount of the judgment rendered in favor of petitioner. It felt that the privilege existed on the property prior to the sale thereof by the other heirs to Isaac Washington, Jr. and that the sales were burdened by the privilege affecting the interest of each of the vendors. In arriving at this conclusion, the Court of Appeal considered these two questions:

(1) Prescription—Did petitioner's rights prescribe by virtue of the fact that more than three months elapsed between the acceptance of the Succession of Isaac Washington, Sr. and the bringing of the present suit to determine whether or not petitioner was entitled to the widow's portion?

(2) Was the privilege of the widow's portion actually present in the instant suit?

The first question was answered negatively; the second affirmatively.

6. 116 So.2d 125.

On this review, relator, Isaac Washington, Jr., alleges that the findings of the Court of Appeal were erroneous. He also contends that if this Court allows the judgment of the Court of Appeal to stand, it will, in effect, allow the property of one judgment debtor to be seized and sold to satisfy the obligations of all the judgment debtors when the original judgment only cast the debtors each for their virile share.

Counsel for Louvenia Washington, in his brief, states that the issue to be decided by this Court is whether or not the petitioner's right to claim the widow's portion has prescribed prior to the filing of the present suit, as well as whether or not the privileges afforded the widow would bear against the property which is now owned by Isaac Washington, Jr., the property having been purchased from the other heirs to the Succession of Isaac Washington.

Amicus Curiae has filed a brief in this Court, wherein it is alleged:

"Article 1458 states that succession property cannot be sold within ninety (90) days from acceptance. The same rule is established in Article 3275. The purpose of these articles is to afford time to creditors to file a petition for separation of patrimony. After this ninety (90) day period, however, the heir is at liberty to sell and the public is at liberty to buy. The effect of the decision of the Court of Appeal in the instant case, however, is to amend these Articles so as to effectively prevent an heir from selling inherited separate property so long as there is a widow alive who may at sometime in the future claim a privilege for a widow's homestead. It is believed that such an interpretation does violence to our system of succession laws."

It must be remembered that there has been no appeal from the judgment for $890.73, rendered October 16, 1958. Therefore, this judgment is final as to its amount. We have before us only the question of the privileges arising from the judgment.

A consideration as to whether the articles of the Revised Civil Code with respect to the separation of patrimony apply to the present proceeding discloses that Article 1456 of the LSA–Civil Code, supra, which provides that the suit of separation of patrimony must be instituted within three months from the express or tacit acceptance of the heirs is found in that part of the Civil Code which treats of the payment of the debts of a succession. Article 1444, LSA–R.C.C., recites that the creditors of the succession may demand, in every case and against every creditor of the heir, a separation of the property of the succession from that of the heir. In other words, the purpose of the separation of patrimony is to separate the property of the heir from that of the succession of the deceased. The object of the separation of patrimony is to

prevent property, out of which a particular class of creditors have a right to be paid, from being confounded with other property, and by that means made liable to the debts of another class of creditors, LSA–C.C., Art. 1445. The effect of the demand on the part of the creditors of a succession is to cause them to be paid from the effects of the succession in preference to the creditors of the heir. LSA–C.C., Art. 1446. The separation may be demanded by all the creditors of the deceased, whatever they may be. LSA–C.C., Art. 1447. The right to demand the separation of patrimony is extended to legatees and to heirs. LSA–C.C., Arts. 1449 and 1450. "In the interval between the opening of the succession and the three months allowed for the institution of the suit for the separation of the patrimony, the heir can not alienate, affect nor [or] sell the effects of the succession, nor [or] any of them to the prejudice of the creditors; and if he does it, the creditors may cause the acts to be declared null, as done in fraud of their rights." Art. 1458, LSA–C.C. Creditors and legatees who demand a partition of the patrimony of the deceased preserve their privilege as against the heirs or representatives of the deceased on the immovables of the succession only by recording the evidences of their claims against the succession within three months after it is opened. LSA–C.C., Art. 3275. Until the expiration of the three months, no mortgage can be enforced against the property, nor any alienation be made by the heirs or representatives of the deceased, to the injury of the creditors of the succession. LSA–C.C., Art. 3275.

We believe that the aforesaid articles of the Revised Civil Code apply to plaintiff herein. Her right to claim the $1,000.00 portion under Article 3252 of the LSA–Civil Code came into existence at the moment of her husband's death. Her status was determined as of that date. Succession of Kuntz, La.App., 179 So. 623. During the three months elapsing after the heirs of Isaac Washington, Sr. accepted his succession unconditionally, plaintiff was favored with a special privilege which did not have to be recorded. LSA–Civil Code, Article 3276 [7]; Article XIX, Sec. 19, Louisiana Constitution of 1921.[8] In order to re-

---

7. "The charges against a succession, such as funeral charges, law charges, lawyers' fees for settling the succession, *the thousand dollars secured in certain cases to the widow* or minor heirs of the deceased, and all claims against the succession originating after the death of the person whose succession is under administration, are to be paid before the debts contracted by the deceased person, except as otherwise provided for herein, *and they are not required to be recorded.*" (Emphasis ours.) Art. 3276, LSA–C.C.

8. "No mortgage or privilege on immovable property, *or debt for which preference may be granted by law,* shall affect third persons unless recorded or registered in the parish where the property is situated, in the manner and within the time prescribed by law, *except* privileges for expenses of last illness, *privileges arising upon the death of the*

main alive after the three month interval, however, the privilege had to be asserted against the heirs of Isaac Washington, Sr., within that interval. Such assertion could have been by an action for separation of patrimony. If plaintiff believed that the heirs of Isaac Washington, Sr., had embarrassing debts which could absorb their inheritance, it was incumbent upon her as a special creditor to petition the proper court for preservation of her rights. Rapides Grocery Co. v. Vann, 230 La. 829, 89 So.2d 359. The legal effect of a delay of more than three months to bring such action was the loss of the privilege and the relegation of plaintiff to the position of an ordinary creditor. Danna v. Danna, La.App., 161 So. 348.

The defendant Isaac Washington, Jr., was one of several heirs of the decedent and as such inherited only a fractional part of the decedent's estate. His liability extended to his virile share of the debts of the succession, including the widow's portion. Normand v. Thompson, 2 La. App. 413; Carroll v. Carroll's Heirs, 16 La. App. 278, 134 So. 290; Article 1427, LSA–C.C.

After the lapse of three months from the time he accepted the succession of his father unconditionally, Isaac Washington, Jr., became a third party quoad the plaintiff widow. The property which he had purchased from his co-heirs became immune from the assertion of her alleged privilege.

Notwithstanding the provisions of Article 3276 of the LSA–Civil Code that the charge against a succession for the thousand dollars secured in certain cases to a widow need not be recorded, and the provisions of Article XIX, Sec. 19, Louisiana Constitution of 1921, that privileges arising upon the death of the owner of property affected need not be recorded, we conclude that the widow claiming her privilege or charge for a thousand dollars under Article 3252 of the LSA–Civil Code must assert her claim within three months from the express or tacit acceptance of the succession by the heirs. We do not agree with the findings of our learned brothers of the Court of Appeal in the case of Beck v. Beck, 181 So. 635, to the contrary.

We have searched for and have been unable to find any provision of our law relating specifically to the prescription of the privilege granted a widow under Article 3252 of the LSA–Civil Code. Reason dictates and justice demands that we find that plaintiff did not timely assert her privilege and has lost it. Danna v. Danna, supra.

owner of the property affected, and privileges for taxes, State, parish and municipal; provided such tax liens, mortgages and privileges shall lapse in three years from the 31st day of December in the year in which the taxes are due; and whether such liens are now or hereafter recorded; * * * ". (Emphasis ours.) Art. XIX, Sec. 19, La.Const. of 1921.

A contrary holding would permit a widow to hold a sword over the estate of her deceased husband for an unreasonable length of time [9] and thereby subject titles to real property to question.

For the reasons assigned, the judgment of the Court of Appeal, First Circuit, is reversed and set aside. The judgment of the trial court is affirmed. All costs are to be paid by plaintiff.

On Rehearing

McCALEB, Justice.

The questions for decision herein arise out of the seizure of real property formerly belonging to a succession, under a writ of fieri facias in execution of a judgment obtained by plaintiff against the heirs of her former husband for the widow's homestead provided by Article 3252 of the Civil Code. The facts of the case are fully stated in our original opinion and will be repeated here only to the extent necessary to bring the legal problems into focus.

Isaac Washington, Sr., died in 1953. He had been married twice and was survived by plaintiff, his second wife, three children of his first marriage (one of whom died shortly thereafter leaving one child as her only heir) and two grandchildren. The main asset of his estate was his undivided one-half interest in a piece of improved real property which had been acquired during

the existence of the first community. At the death of Washington's first wife, the children of that marriage inherited their mother's undivided one-half interest in the property subject to their father's usufruct. In 1954, these children and grandchildren opened the successions of Washington and his first wife, which they accepted unconditionally, and were put in possession of all the succession property by an ex parte judgment. Two days later one of the children, Isaac Washington, Jr., acquired from his co-heirs the piece of real estate above mentioned on which plaintiff had lived since her marriage.

Soon after his purchase, Washington, Jr., brought ejectment proceedings against plaintiff, who subsequently, filed the instant suit against the heirs of her deceased husband for recovery of the widow's homestead of $1,000, and other items of indebtedness, alleging that she was in necessitous circumstances at the date of her husband's death. Her claims were resisted by the heirs but, after a trial, judgment was granted in her favor for the widow's homestead less certain credits chargeable to her for rent of the premises involved after the death of her husband. The heirs did not appeal from this judgment and, when it became executory, plaintiff caused the real estate to be seized under a writ of fieri facias. Thereupon, Washington paid the

---

9. LSA–Civil Code Article 3544 provides that, in general, all personal actions, except those before enumerated, are prescribed by ten years.

amount of his virile share due under the judgment into the registry of the court and then proceeded by rule to have the seizure of his property set aside. At the hearing on this rule, plaintiff contended that she had a privilege on the real estate for the payment of the judgment recognizing her widow's homestead and that the seizure should not be released. The judge rejected this contention and released the seizure, stating that plaintiff must be held to have waived her privilege since she failed to claim it in her suit against the heirs and have it recognized in the judgment. Thereafter, plaintiff sought recognition of her privilege by supplemental petition filed in the original suit but this pleading was rejected by the judge. Then she appealed from the judgment rescinding the writ of fieri facias to the Court of Appeal, First Circuit, where the judgment was reversed, that court holding that plaintiff's failure to request recognition and enforcement of her privilege in the suit claiming the widow's homestead did not constitute a relinquishment and further that her legal privilege on the real estate of the succession was not affected by the prescription of 90 days pleaded by defendant, Washington, Jr. See Washington v. Washington, 116 So.2d 125.

This writ of certiorari was granted to review the holding of the Court of Appeal.

On first hearing, we concluded that plaintiff's privilege had become extinguished by her failure to institute a suit for a separation of patrimony within 3 months from the acceptance by the heirs of their father's. succession.

During oral argument on rehearing counsel for Washington, Jr. reurged his contention, which was sustained by the district court, that plaintiff waived her privilege on the succession property by failing to have it recognized in her demand for recovery of the widow's homestead.

We find no merit in this point. The circumstance that plaintiff did not seek recognition of the privilege accorded her by Article 3252 of the Civil Code [1] in her suit against the heirs cannot be viewed as a waiver of her right to claim this privilege at the time it became necessary and expedient to have it enforced. The property herein was lawfully seized under a. writ of fieri facias and, while it is true that Washington, Jr. was personally liable for only his virile share of the judgment in plaintiff's favor, the property he acquired from the succession of his father by inheritance and purchase was burdened with plaintiff's legal privilege, which was not required to be recorded. We can think of no valid reason why plaintiff should be held

1. The article declares that the widow's homestead " * * * shall be paid in preference to all other [succession] debts, except those secured by the vendor's privilege on both movables and immovables, conventional mortgages, and expenses incurred in selling the property."

to have lost her privilege because she did not seek judicial sanction of it when she sought recovery in personam from the heirs. There was no necessity for assertion of the privilege in that action; the law granted the privilege and failure to seek recognition cannot be rightly said to equate abandonment.

In Perot's Estate v. Perot, 177 La. 640, 148 So. 903, 904, the plaintiff sued for and obtained a personal judgment against the defendant for $96 for rent due on a store building. Plaintiff did not ask in those proceedings for recognition of the landlord's lien or obtain a writ of provisional seizure and no mention was made of the nature of the debt in the judgment rendered. Later a writ of fieri facias was issued under which the constable seized a lot of store fixtures in the leased building. Before sale was made, the party holding a chattel mortgage on the fixtures filed a third opposition and requested payment in preference to the seizing creditor out of the proceeds of the constable's sale. In answer to the third opposition, plaintiff averred that the judgment in favor of the estate was rendered on a claim for rent and asserted that the landlord's lien, although not claimed or recognized in the judgment, was superior to the chattel mortgage of the opponent. On the trial, these facts were proven and judgment was rendered rejecting the third opposition. Thereafter, the case reached this Court on writ of certiorari issued at the instance

of the third opponent who complained mainly of the introduction of parol evidence to prove the landlord's lien at the trial of the third opposition. After review here the judgment was affirmed, it being observed that plaintiff's failure to ask for recognition of the landlord's lien in the suit in which the monied judgment for rent was obtained " * * * had no significance, one way or the other". The Court further said:

"A plaintiff whose claim is secured by a lien does not waive his lien by failing to ask for recognition of it unless and until there is some necessity for having the lien recognized. If there is no demand for recognition of the lien, the judgment rendered for the debt, without mention of the lien, does not have the effect of a denial that the debt is secured by a lien. Nalle v. Baird, 30 La.Ann. [1148] 1150; Battalion Washington Artillery v. St. Charles Skating Rink Co., 7 Orleans App. 431; Cazzo v. Ulrich, 13 Orleans App. 257; 34 C.J. 853, § 1265; 15 R.C. L. 977, § 452."

■■ If, under the law, the debt creates a privilege or there is a conventional mortgage, such privilege or mortgage exists independently of the judgment rendered upon it. See Parker v. Starkweather, 7 Mart., N.S., 337; Holmes v. Holmes, 9 Rob. 117; Gustine v. Union Bank of Louisiana, 10 Rob. 412 and J. Davidson Hill & Co. v.

Bourcier, 29 La.Ann. 841. Hence, in the instant case plaintiff was not obliged to pray for recognition of the privilege given her by law on all of the property of the succession until her right to sell the seized property securing the debt was questioned by Washington, Jr. at which time she properly asserted her preferential right and sought judicial recognition of it.

■ This brings us to a reconsideration of our decision on first hearing that plaintiff's privilege on the property of her deceased husband's succession was extinguished after expiration of three months from the acceptance of the succession by the heirs. In reaching this conclusion we relied on the 1935 decision of the Court of Appeal, First Circuit, in Danna v. Danna, 161 So. 348 and rejected the contrary ruling in 1938 of the Court of Appeal, Second Circuit, in Beck v. Beck, 181 So. 635, which the present members of the Court of Appeal, First Circuit, in ruling herein for plaintiff, believed to be a correct view of the law.

The Danna and Beck cases involved the same question presented here—i. e., whether the privilege granted to a widow in necessitous circumstances prescribes under Article 1456 of the Civil Code, if she fails to institute a suit for separation of patrimony within 90 days of the acceptance of the succession by the heirs. The affirmative conclusion reached in the Danna decision was predicated on the assumption that the codal provisions dealing with the separation of patrimony " * * * will not admit the existence of any preference after three months, * * * ". [161 So. 351]

On the other hand, the opinion in the Beck case, after considering the stated purpose of a suit for separation of patrimony and the requirements essential for the maintenance of the action (Articles 1445 and 1457 of the Civil Code) concludes that the institution of such a suit is not essential in order to preserve a privileged debt.

■ Our further study of this case has convinced us of the soundness of the Beck decision[2] and we are now of the opinion that the privilege, accorded to the widow in necessitous circumstances does not prescribe by reason of her failure to sue for a separation of patrimony. The object of a separation of patrimony, as stated by Article 1445 of the Civil Code, "is to prevent property, out of which a particular class of creditors have a right to be paid, from being confounded with other property,

---

2. It is to be noted that this Court in Rapides Grocery Co. v. Vann, 230 La. 829, 89 So.2d 359, disagreed with the observation in Beck v. Beck that the Civil Code articles require that the petitioning creditor must join the creditors of the heir as defendants in order to sustain an action for separation of patri-

mony. While we think that the Beck opinion went too far in the above stated respect, the result reached in that matter and the reasoning of the court in reaching that result conforms with a proper interpretation of the articles of the Civil Code dealing with separation of patrimony.

and by that means made liable to the debts of another class of creditors." This being so, the period of three months allowed creditors for the institution of a suit for separation of patrimony is a prescription which affects only the right of succession creditors to institute such a suit. Indeed, that is all that Article 1456 prescribes for it states that "The suit * * * must be instituted within three months * * *; after the expiration of this term, it [the suit] is not admitted." It cannot be justifiably construed as a prescription either of the debt or of the privilege created by law to secure the payment of the debt. An ordinary succession creditor who fails to institute an action for separation of patrimony within the time prescribed by Article 1456 incurs only the loss of his right to be paid out of the succession assets to the exclusion of the creditors of the heirs; he does not lose his right to recover from the heirs who accept the succession unless his claim is otherwise prescribed under positive provisions of law.

 The holder of a privilege, defined by Article 3186 of the Civil Code to be a right which the nature of the debt gives the creditor entitling him to be preferred before other creditors, "even those who have mortgages", has no reason to seek a separation of patrimony. The law grants him preferential rights on the succession property, so there is no possibility of the creditors of the heirs priming his rights. If the debt itself has not prescribed, the privilege, which is an accessory right to secure payment, does not, in the absence of positive law on the subject, prescribe before the debt itself. Accordingly, since the widow's homestead claimed by plaintiff was recognized by final judgment in these proceedings, from which no appeal was taken, it necessarily follows that the privilege the law gave to secure preferential payment of that claim could not be avoided on the basis of prescription in the absence of a claimed statutory provision different from that applicable to the debt.

As noted in our original opinion, we have been favored with an amicus curiae brief filed by the Title Examination Committee of the New Orleans Bar Association. This Committee argues that the 90-day prescription allowed for the filing of suits for separation of patrimony is applicable to the privilege accorded to the widow in necessitous circumstances in view of Article 1458 of the Code, which states that succession property cannot be sold within 90 days from acceptance, and Article 3275 declaring, in substance, that creditors and legatees who demand a partition of the patrimony "* * * preserve their privilege, as against the heirs or representatives of the deceased, on the immovables of the succession, only by recording the evidences of their claims against the succession within three months after it is opened."

■ We fail to discern the pertinency of Article 1458 to this case. That article merely denies to the heirs the right to alienate the succession effects within the three-month period allowed for the filing of a separation of patrimony. It cannot be interpreted as meaning that a privileged creditor, whose claim is not required to be recorded (such as a claim for widow's homestead), loses the privilege upon failure to file a suit for separation of patrimony within the time prescribed by Article 1456.

Nor does Article 3275 have any bearing on the question for decision. A reading of that article readily reveals that it applies only to privileged claims which do not affect the immovables of the succession unless they are recorded.

The codal article applicable to the case at hand is Article 3276, providing that succession charges, law charges, fees for settling the succession, the $1,000 secured in certain cases to the widow or minor heirs and all claims against the succession " * * originating after the death of the person whose succession is under administration, are to be paid before the debts contracted by the deceased person, except as otherwise provided for herein, and they are not required to be recorded."

Plainly, since plaintiff's privilege on the property of the succession was not required to be recorded, it would be inappropriate to conclude that she lost the privilege because she did not file a suit for separation of patrimony and record her claim as a privilege against the real property seized under the writ of fieri facias within three months after the succession was opened.

■ While we are of the view that the Court of Appeal was correct in reinstating plaintiff's seizure of the real property now owned by Washington, Jr., it does not appear that the court set forth the extent of plaintiff's privilege. This privilege bears only on the succession property of Washington, Sr., who owned at the time of his death (when plaintiff's lien came in esse) an undivided one-half interest in the real estate seized, the other undivided one-half interest having vested in the heirs of his first wife at the date of her death. See Succession of Harper, La.App., 163 So. 177 and cases there cited. Under the circumstances, the judgment must be amended.

For the foregoing reasons our original opinion and decree are set aside and it is now ordered that the judgment of the Court of Appeal be and it is amended by recognizing that plaintiff has a privilege on an undivided one-half interest in the real estate seized herein under the writ of fieri facias to secure payment of the judgment in her favor amounting to $890.73 and costs and the seizure of the real estate is maintained to that extent. As thus amended, the judgment of the Court of Appeal is reinstated and affirmed at the cost of Isaac Washington, Jr.

SANDERS, J., concurs in the decree.

HAMITER, Justice (concurring in part and dissenting in part).

Assuming (but not conceding) that initially plaintiff was entitled to and enjoyed the widow's homestead privilege, I agree that it could affect no more than the undivided one-half interest in the seized real estate which Isaac Washington, Sr., owned when he died, the remainder having vested in the heirs of his first wife at the date of her death.

However, I do not agree that such privilege now affects the interest which Isaac Washington, Jr., purchased from his coheirs. As stated in the Louisiana Revised Civil Code " * * * all final judgments affecting immovable property shall be recorded in the parish where the immovable property is situated." Article 2265. "All * * * judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording." Article 2266. "Privileges are valid against third persons, from the date of the recording of the act or evidence of indebtedness as provided by law." Article 3273. At the time of the mentioned purchase (it occurred more than ninety days after the death of Isaac Washington, Sr.) there was nothing of record evidencing plaintiff's claimed privilege or the indebtedness that it allegedly secured; and un-

questionably Isaac Washington, Jr., who admittedly paid a good and sufficient consideration for his acquired interest, was a third person purchaser.

On Rehearing

HAMLIN, Justice (dissenting).

I respectfully dissent from the majority opinion on rehearing in this matter for the reasons expressed in the original opinion of this Court, of which I was the author. October 5, 1960, and for the further reasons hereinafter set forth.

I have searched for and have been unable to find any provision of our law relating specifically to the prescription of the privilege granted a widow under Article 3252 of the LSA–Civil Code.

Article 21 of the LSA–Civil Code provides as follows:

"In all civil matters, where there is no express law, the judge is bound to proceed and decide according to equity. To decide equitably, an appeal is to be made to natural law and *reason*, or received usages, where positive law is silent." (Emphasis mine.)

*Reason* dictates that a widow is able to decide immediately after the death of her husband whether she is in necssitous circumstances and will thereby feel the pinch of poverty; she should be able to decide within three months whether or not she will claim the privilege granted to her under Article 3252, supra. Justice demands

that she should require recognition of her privilege within the same time as the Civil Code provides for the demand for separation of patrimony. She should not be permitted to hold a sword over the estate of her deceased husband for an unreasonable length of time and thereby subject many titles to real property to question.

Try as I will, I cannot perceive why title examiners should be compelled in many cases to require affidavits to the effect that the "widow's thousand" has been satisfied before finally passing upon the merchantability of a title. Property owners have enough burdens without adding this additional one to their travail.